■ MELVIN LANE et al., Respondents, v. ELWOOD ESTATES, INC., Appellant.— In an action to foreclose a vendees' lien on real property, defendant appeals from a judgment of the Supreme Court, Nassau County, entered December 7, 1966 after a nonjury trial, in favor of plaintiffs in the sum of $1,750, plus interest, costs and disbursements. Judgment affirmed, with costs. Although most of the facts are set forth in the dissenting memorandum, there are several additional facts which we believe are significant to the decision at bar. Plaintiff Melvin Lane had three different incomes at the time he made the application for the mortgage loan in March, 1965. His total income at that time was approximately $20,000 a year. In June of 1965, he lost two of his incomes which had provided approximately $18,000 of the yearly total. This loss of employment was established by letters from the former employers indicating that there were no prospects of the resumption of the employments. His principal source of income had been with Tony Cabot Associates, which had employed him as a band leader at the Tavern-on-the-Green at a salary of $10,000 a year. As a result of the loss of employments, his income was reduced to between $50 and $125 a week in October, 1965. He testified that he waited from June until October before he had his attorney inform the bank of the change of circumstances because he did not believe that his economic situation would remain bad. It was established that he actively sought and engaged in new employment during that period, but was unable to secure employment at anywhere near his former level of income. Plaintiffs have five children, one of whom has a brain injury, and they wished to buy the house because the school system in the locale (Westbury) has special facilities for brain-injured children. While it is true that plaintiff Melvin Lane's resumption of employment with Tony Cabot Associates on November 30, 1965, after the lending institution had withdrawn its commitment, may create some suspicion, the type of employment involved (as a band leader), which is seasonal in nature, plus the testimony that in June he could not get another booking, seems to refute any suspicion of bad faith. Furthermore, under the circumstances, it would seem incredible that this man with five children would deliberately bring about his unemployment, especially in view of his prior employment history. The testimony also indicated that after a mortgage commitment is given the bank reserves the right to cancel prior to closing. It was further established that commitments are qualified to the extent that earning capacity

and conditions remain the same until the time of the closing. At the time of the closing plaintiffs would have been required to state that their income had not diminished so as to endanger their ability to carry the mortgage. The letter from plaintiffs' attorney to the bank indicates that, in view of the change of circumstances, plaintiffs wished to know whether the bank would still issue the mortgage. We are of the opinion that the issue of good faith on the part of plaintiffs is the key to the decision at bar. The trial court found that plaintiffs had acted in good faith in informing the lending institution of their change of circumstances. We agree with the finding of good faith. It is apparent from the testimony that plaintiffs truly desired to purchase the house. It appears that plaintiff Melvin Lane made genuine efforts to obtain new employment and that plaintiffs informed the lending institution of their situation only when it appeared that new employment at or near the former level of income could not be obtained. We believe that this was done in good faith and, in view of the testimony concerning the need to disclose changes of circumstances, it would appear that plaintiffs were under a duty to so act. Insofar as the claim is made that defendant suffered damage when it continued to work on the house during the four months that plaintiffs failed to notify it of the change of circumstances, there is no indication in the record that, had plaintiffs so informed it, defendant would have ceased construction of the house. *Kourt* v. *Sunny View Homes* (24 A D 2d 556), cited in the dissent, is distinguishable, since there it was obvious that the vendee was actively attempting to avoid the entire transaction. Rabin, Acting P. J., Benjamin and Martuscello, JJ., concur; Hopkins and Munder, JJ., dissent and vote to reverse the judgment and dismiss the complaint, with the following memorandum: The question is whether plaintiffs were entitled to a return of their deposit on a contract to purchase from defendant a dwelling which the latter was to build. The contract, executed on March 12, 1965, reads in part as follows: "In the event the lending institution, V. A. and/or F. H. A. shall refuse to approve the application aforesaid for the amount set forth and upon the terms and conditions above described, the money deposited hereunder, shall be returned to the Purchasers, and upon such repayment both parties hereto shall be released from any further liability hereunder." After application by plaintiffs on March 29, 1965, the Williamsburgh Savings Bank approved a mortgage loan in the sum of $26,600, on April 7, 1965. The sale contemplated a closing after the final completion of the house. On October 22, 1965 a certificate of occupancy for the house was issued. Closing of the title was scheduled for November 16, 1965. On October 25, 1965 plaintiffs' attorney wrote to the bank, stating that the plaintiff husband's income had diminished to $125 a week or less, mainly through cessation of his major employment. On November 12, 1965 the bank withdrew its approval of the mortgage. Plaintiffs then sought to be relieved of their contract and to obtain the return of their deposit, claiming the sanction of the contract provision quoted. Thereafter defendant sold the house at a loss greater than plaintiffs' deposit. Special Term granted judgment in favor of plaintiffs upon the theory that the contract provision permitted a recovery of the deposit since the mortgage application had not been approved. However, it is clear on this record that in point of fact the bank had approved the mortgage loan and that it was not until after the house had been completed that the approval was withdrawn. We do not think that the contract provision can be reasonably construed as requiring a continuing approval during the time between the execution of the contract and the closing of the title. Defendant proceeded with the construction of the house on the strength of the approval; it should not be placed in the position of taking the risk that the purchaser's employment might cease during the

period of construction. The deposit, indeed, is intended for the protection of the seller in proceeding with the contract in the event that the purchaser defaults. These circumstances render it necessary that the risk of a loss of employment be imposed on the purchaser, the party who is most intimately concerned with that kind of a change in condition. We have considered a similar provision in a contract for the purchase of a house not to permit the recovery of a deposit where the lending institution notified the seller that its commitment for a mortgage loan had been canceled due to the loss of the purchaser's employment (*Kourt* v. *Sunny View Homes*, 24 A D 2d 556). No distinction exists between *Kourt* and this case. Even if we assume that the provision contemplated a release from the obligation of the contract in the event of a change in the financial condition of plaintiffs, in our opinion plaintiffs acted unfairly in their dealings with defendant. The evidence discloses that the plaintiff husband's principal employment terminated about June 20, 1965. Yet he did not inform defendant of the fact until October 18, 1965, and not until October 25, 1965 did he inform the bank. It is not without significance that he resumed his employment with his principal employer on November 30, 1965, two weeks after the closing date. Good faith is always a constituent element of a contract (*Kirke La Shelle Co.* v. *Armstrong Co.*, 263 N. Y. 79, 87). Plaintiffs knew for nearly four months of the facts upon which they now rely as a basis for their recovery and yet did not deign to inform defendant of those facts during that period of time. During this time defendant continued with the construction of the house on the assumption that plaintiffs were bound by the contracts. We think that plaintiffs' conduct was so prejudicial to defendant's rights as to disable them from enforcing the contract.