■ KARAN KAPUR, Appellant, v NANCY STIEFEL et al., Respondents. [695 NYS2d 330] —Order, Supreme Court, New York County (Louise Gruner Gans, J.), entered October 7, 1998, which denied plaintiff's motion for summary judgment, granted defendants' cross motion for summary judgment, and directed the escrow agent to pay the down payment to defendants, modified, on the law, to deny defendants' cross motion for summary judgment and vacate the direction respecting the payment of the escrowed funds, and otherwise affirmed.

Inasmuch as plaintiff's mortgage commitment letter was revoked by the lender after the contingency period, the provision in the contract of sale conditioning plaintiff's right to the return of his escrowed down payment upon his cancellation of the contract within seven business days after the date specified for obtaining the commitment letter was inapplicable. Nor, under the circumstances at bar, involving a commitment revocation as opposed to the failure to obtain a commitment in the first instance, was plaintiff's cancellation of the contract otherwise governed by specific provisions of the parties' contract. This being the case, plaintiff purchaser's right to the return of his escrowed down payment turns instead upon whether the commitment revocation and consequent failure of the transaction was attributable to bad faith on plaintiff's part (*see, Creighton v Milbauer*, 191 AD2d 162; *Lunning v 10 Bleecker St. Owners Corp.*, 160 AD2d 178, *lv denied* 76 NY2d 710; *Lane v Elwood Estates*, 31 AD2d 949, *affd* 28 NY2d 620). That, however, is not an issue properly resolved as a matter of summary adjudication since the record raises questions of fact as to whether the termination of plaintiff's employment leading to the commitment revocation was a circumstance of plaintiff's making intended to bring about the failure of the subject real estate transaction (*see, Creighton v Milbauer*, 191 AD2d 162, *supra*).

Under the dissent's interpretation, the last-minute revocation of a mortgage loan commitment by a lender, even a wholly arbitrary one, would put the purchaser in the unenviable position of either having to proceed to closing notwithstanding that its diligent and good faith efforts to secure alternative financing were unsuccessful, or to risk forfeiture of the down payment. This is not the law, nor should it be. As our cases have consistently held, "[w]hen a condition of a mortgage loan commitment is not fulfilled through no fault of the purchasers, their performance is excused, so long as they acted in good faith" (*Lunning v 10 Bleecker St. Owners Corp., supra*, at 178). As the subject agreement is completely silent as to the legal consequences of revocation of a mortgage commitment, we rely on the established principle that "[a] mortgage contingency clause is construed to create a, condition precedent to the contract of sale" (*Creighton v Milbauer, supra*, at 165), and find that the failure of the condition in this case provided plaintiff with the right to cancel, assuming he acted in good faith. Concur—Nardelli, J. P., Mazzarelli and Lerner, JJ.

Saxe, J., dissents in a memorandum as follows: Having obtained a mortgage commitment pursuant to a contract to

purchase a cooperative apartment, the purchaser, Mr. Kapur, then lost his job. He notified the lending bank of this change in his financial situation, and they responded by revoking their mortgage commitment to him. Mr. Kapur promptly notified the sellers of his inability to proceed without the bank's commitment to provide mortgage funds to him and demanded the return of his $40,500 deposit. The sellers refused and this litigation began. On competing motions for summary judgment, the IAS Court granted the defendant-sellers' application and directed the escrow agent to pay the down payment over to them. I would affirm that order.

Analysis of this situation requires consideration of both the law of contracts and the operation of conditions contained in mortgage commitments.

Review of the mortgage contingency provision of the standard cooperative form contract of sale entered into by these parties shows that it is of no assistance in resolving this dispute. Section 19 of the contract, denominated "Financing Contingency", provides as follows:

"19.1 Purchaser may cancel this Contract and recover the Contract Deposit by following the procedure in Par. 19.4. if after complying with Purchasers 'Financial Obligations' in Par. 19.2 below and Purchaser's other obligations under this Contract:

"19.1.1 Purchaser fails through no fault of Purchaser to obtain from an 'Institutional Lender' (defined in Par. 19.5.1) a 'Loan Commitment Letter' (defined in Par. 19.5.2) for financing on the Loan Terms and within the time period stated in Par. 1.16 (the 'Loan'); or

"19.1.2 the Institutional Lender and the Corporation cannot agree on the terms of an agreement for the protection of the Institutional Lender (commonly called a recognition agreement) if required by the Institutional Lender.

"19.2 Purchaser's right to cancel under Par. 19.1 and recover the Contract Deposit is conditioned upon Purchaser's diligent compliance with all of the following 'Financing Obligations':

"19.2.1 Purchaser must apply in good faith for the Loan from an Institutional Lender within 7 business days after a fully executed counterpart of this Contract is given to Purchaser;

"19.2.2 the Loan application must contain truthful, accurate and complete information as required by the Institutional Lender; and

"19.2.3 Purchaser must comply with all requirements of the Institutional Lender to obtain the Loan Commitment Letter and to close the loan."

While paragraph 19.1 of the contract permits the purchaser to cancel the contract and recover his deposit if he fails to obtain a loan commitment letter from an institutional lender within a prescribed period (or in other circumstances not relevant here), plaintiff *did* obtain a timely loan commitment. Paragraph 19.2 merely sets further conditions on the purchaser's right to cancel pursuant to paragraph 19.1. Therefore, plaintiff's reliance on paragraph 19.2.3 to entitle him to cancel the contract is misplaced; that provision does not apply here.

Moreover, paragraph 19.2.3, which sets out the purchaser's contractual obligation to comply with the lender's requirements, amounts to simply a condition inserted in the contract for the benefit of the seller. When a condition is included for the benefit of one party to a contract, the other party may not use the non-occurrence of the condition to avoid the contract (*see*, Restatement [Second] of Contracts § 226, illustration 8). Therefore, the purchaser's failure—or inability—to comply with his contractual obligation to the financing bank to maintain his financial stability does not entitle the purchaser to rely on paragraph 19.1 to cancel the contract and recover the down payment.

Nor may plaintiff argue that the mortgage commitment plaintiff received was insufficient to satisfy the contract in view of the condition imposed. While in some circumstances, conditions contained in mortgage commitments have been viewed as negating the "commitment", such as where the commitment is conditioned upon the sale of the purchaser's current apartment (*see, e.g., Kressel, Rothlein & Roth v Gallagher*, 155 AD2d 587, 588; *Weaver v Hilzen*, 147 AD2d 634), a review of the contract at issue reflects a recognition by the parties that the purchaser might receive a conditional mortgage commitment. They specifically included a commitment that contained conditions as part of the definition of a mortgage commitment letter that would satisfy the contract's financing contingency: "19.5.2 A 'Loan Commitment Letter' is a written offer to make the Loan with or without recourse, and whether or not conditional upon any factor other than an appraisal satisfactory to the Institutional Lender. An offer to make the Loan which is conditional on obtaining a satisfactory appraisal shall only become a Loan Commitment Letter upon such condition being met." Thus, the parties specifically contemplated the possibility of such a condition, and agreed that despite inclusion of conditions (with the exception of one requiring a satisfactory appraisal), a commitment letter would satisfy paragraph 19.1.1.

It is a fundamental tenet of contract law that the parties are

free to allocate the risks that might affect performance (*see, Kel Kim Corp. v Central Mkts.,* 70 NY2d 900, 902; *Comprehensive Bldg. Contrs. v Pollard Excavating,* 251 AD2d 951). It is expected that the contracting parties will negotiate the terms necessary to take those risks into account. Indeed, the standard form contract in use here actually allocates the risk of the purchaser not receiving the contemplated mortgage financing during the period between the contract signing and the closing. Initially, the seller bears the risk; the contract of sale grants to the buyer the right to cancel the contract if he is unable to obtain a mortgage commitment, if he has cooperated with the application process, and as long as he exercises this right in a timely manner. But, once the purchaser receives a mortgage commitment, the provisions of this standard residential cooperative contract of sale allocate to the buyer the risk of his financing falling through prior to the closing. Between the time the letter of commitment—even a conditional one—is issued and the scheduled closing, the purchaser no longer has a right to cancel.

Nor can this change in the purchaser's circumstances be said to constitute the type of impossibility that under common-law contract principles would excuse the purchaser's performance under the contract. A sudden downturn in the finances of a contract vendee does not eliminate his obligation to make the contracted-for purchase, and the failure to do so entitles the contract vendor to all available remedies for breach of contract: "Generally, once a party to a contract has made a promise, that party must perform or respond in damages for its failure, even when unforeseen circumstances make performance burdensome * * *. Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible. Moreover, *the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract* (*see, 407 E. 61st Garage v Savoy Fifth Ave. Corp.,* 23 NY2d 275; *Ogdensburg Urban Renewal Agency v Moroney,* 42 AD2d 639)." (*Kel Kim Corp. v Central Mkts.,* 70 NY2d 900, 902, *supra* [emphasis added].)

The intervening events that occurred here, the purchaser's loss of employment and the resulting loss of the mortgage commitment, were clearly a possibility that could have been anticipated and provided for in the contract of sale. Indeed, the contract explicitly recognized the possibility that the commitment obtained by the purchaser might contain conditions, and logically, whenever a condition is imposed, there is a possibil-

ity that the purchaser might not be able to satisfy it. The very terms of the contract therefore implicitly recognize the possibility of the events that occurred here: the bank's imposition of a condition that the purchaser could not satisfy, viz., that his financial circumstances remain unchanged.

An examination of the terms of the parties' contract demonstrates that the purchaser-plaintiff has no contractual right to cancel the contract and be repaid his down payment. Consequently, his prospective inability to close on the cooperative contract of sale constitutes a default, entitling the sellers to retain the down payment as liquidated damages—which provision, by definition, is included in the contract to protect the seller in the event of a default by the buyer (*see, Maxton Bldrs. v Lo Galbo*, 68 NY2d 373).

Neither the terms of the parties' contract nor any principle of contract law excuse plaintiff's performance under the contract. Nevertheless, as plaintiff correctly points out, a number of cases, including the cases relied upon by the majority here, have held that a purchaser's inability to perform a condition imposed by a lender, resulting in revocation of a previously-issued mortgage commitment, may excuse the purchaser from performance of a contract of sale and entitle him to the return of his down payment.

Because rote application of this rule appears to run counter to longstanding contract law, I suggest that the underpinnings of these cases be examined before they are applied. Some of these case holdings are supported by the terms of the contracts themselves, or other established doctrines of contract law. In others, the result appears to be simply an attempt to arrive at an equitable result in an unfortunate situation.

In *Lunning v 10 Bleecker St. Owners Corp.* (160 AD2d 178, *lv denied* 76 NY2d 710), this Court enunciated a broad rule that "When a condition of a mortgage loan commitment is not fulfilled through no fault of the purchasers, then performance is excused, so long as they acted in good faith" (citing *Cone v Daus*, 120 AD2d 788, 789-790). In *Lunning*, one of the two buyers, after having received a mortgage commitment, lost his job because of illness which eventually caused his death. The commitment was withdrawn, and this Court concluded that the surviving buyer and the estate of the other were entitled to the return of their down payment. However, the decision contains no indication as to the exact financing contingency provisions contained in those parties' contract of sale. To the extent that the provisions were similar to those in the present case, I believe that the *Lunning* case was wrongly decided and should not be followed.

Nor does it appear that *Cone v Daus* (120 AD2d 788, *supra*), upon which the *Lunning* Court relied, supports the broad ruling enunciated in *Lunning*. In *Cone v Daus*, the parties' contract contained two contingencies, one of which conditioned the effect of the contract on the buyer's obtaining a conventional mortgage loan, by the use of diligent efforts. The buyer obtained a mortgage commitment, but the lender expressly conditioned the loan on, *inter alia*, certification by a recognized well driller that the well on the premises would produce a certain prescribed level of water flow. Because the well driller found that the property's well did not pass the requirement, and the seller refused to have a new well dug or the existing well dug deeper, the bank withdrew its commitment. In holding that the buyers were entitled to return of their down payment, the Court explained that "The contract contained the usual mortgage contingency clause which has been construed to create a condition precedent. When such a condition is not fulfilled through no fault of the purchasers, their performance is excused (*Patterson v Marchese*, 10 AD2d 639). As long as the purchasers exert a genuine effort to secure the mortgage financing and act in good faith, they are entitled to rely on the contract and may recover their down payment if the mortgage is not, in fact, approved (*see, Stotz v Cleveland*, 53 AD2d 787, 788). * * * The law does not require a party to fulfill a condition of a contract that is incapable of fulfillment and is not that party's fault (*Levine v Robin*, 27 AD2d 747)." (*Cone v Daus*, 120 AD2d, *supra*, at 789-790.)

It is noteworthy that the financing contingency provision contained in the contract at issue in *Cone v Daus* (*supra*, at 789) referred to obtaining, not a "commitment", but a "conventional mortgage loan". While the contingency of obtaining a commitment letter is clearly satisfied by a bank's issuance of such a letter, the contingency of obtaining a *loan* is not necessarily satisfied unless and until the lender actually advances the funds. Because they were unable to satisfy the lender's condition, the purchasers in *Cone v Daus* could not obtain the contemplated loan, and thus, unlike the case now before us, their contract's financing contingency was never satisfied. The situation in that case is therefore distinguishable from cases such as this, where the financing contingency refers only to the purchaser's obtaining a mortgage *commitment*, and where such a commitment was initially obtained (albeit subsequently revoked).

And, in *Patterson v Marchese* (10 AD2d 639, *supra*), cited in *Cone v Daus*, the contract provided that the contract was

conditioned upon the purchaser securing a G.I. mortgage; it went on to provide that if the purchaser was unable to obtain a mortgage commitment within six weeks, then at his option the contract could be declared null and void and the down payment repaid. The purchaser did obtain a mortgage commitment, but the seller was unable to deliver clear title on the initial and subsequent scheduled closing dates. By the time the seller cleared title, the lender had withdrawn its commitment. The Court held in favor of the purchaser, reasoning that the contract's condition about obtaining a "mortgage" was included for the protection of the purchaser, and therefore when the condition was not fulfilled through no fault of his own, the purchaser was excused from performance. As in *Cone v Daus*, the contract language in *Patterson* conditioned the agreement upon securing a "mortgage" rather than a "mortgage commitment"—although it then went on to provide for a procedure if a commitment could not be obtained. Moreover, the seller's inability to deliver clear title on either the scheduled or the adjourned closing dates might have warranted a conclusion that the seller had defaulted.

Yet, instead of considering the terms of the contracts of sale in considering whether the negotiated terms covered the presented situations, cases where mortgage commitments have been revoked have turned their analysis solely to whether the purchaser acted in good faith (*see, e.g., Lane v Elwood Estates*, 31 AD2d 949, 950; *Creighton v Milbauer*, 191 AD2d 162, 165; *Lindenbaum v Royco Prop. Corp.*, 165 AD2d 254, 260).

These cases recite and apply the rule that "a party may not frustrate the performance of an agreement by bringing about the failure of a condition precedent" (*Creighton v Milbauer*, 191 AD2d 162, 165, *supra*, citing *Lindenbaum v Royco Prop. Corp.*, 165 AD2d 254, 260, *supra*). In doing so, they blur the line between the terms of the parties' contract of sale and the terms of the mortgage application. They incorrectly treat conditions contained in mortgage commitments as conditions precedent contained in the related, but separate, contract of sale.

Despite the irrelevance of the recited rule to the situation presented, these cases have essentially reasoned that a purchaser's failure to comply with a condition to a mortgage commitment is the same as a failure to satisfy a condition precedent contained in the contract of sale. They therefore conclude that where a mortgage commitment is revoked, the seller will be entitled to retain the down payment only upon proof that the purchaser actually brought about the failure of compliance with the condition imposed by the lender (*see,*

*Creighton v Milbauer*, 191 AD2d 162, *supra*; *Lindenbaum v Royco Prop. Corp.*, 165 AD2d 254, *supra*; *Lane v Elwood Estates*, 31 AD2d 949, 950, *supra*). In other words, as long as the purchaser did not act in bad faith, his inability to perform the condition to the mortgage commitment is enough to excuse his performance under the contract.

To the extent that this rule is applied without reference to the terms of the parties' own agreement, it represents a complete departure from the law of contracts and conditions, the only body of law truly applicable, in favor of an equity-laden analysis founded in nothing more than sympathy for the unfortunate buyer.

I conclude that there is no basis for returning the deposit to the buyer, for it is he who bore the risk of loss under the contract of sale for his prospective inability to close the loan. To the criticism that this result might seem harsh, especially in view of the fact that the buyer lost his employment, it should be noted that the turnover of the deposit to the sellers is not a windfall to them. Defendant Nancy Stiefel stated in an affidavit that the sellers lost valuable rental income for several months because they terminated a month-to-month rental arrangement based upon the purchaser's assurances that he would close quickly. Furthermore, although the apartment was eventually sold, the sellers carried it for seven months longer than had the closing proceeded in a timely manner pursuant to the contract.

In view of the foregoing, I would affirm the order granting summary judgment to the defendant-sellers.