OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, with costs.
In early 1980, plaintiff Kel Kim Corporation leased a vacant supermarket in Clifton Park, New York, from defendants. The lease was for an initial term of 10 years with two 5-year renewal options. The understanding of both parties was that plaintiff would use the property as a roller skating rink open to the general public, although the lease did not limit use of the premises to a roller rink.
The lease required Kel Kim to "procure and maintain in full force and effect a public liability insurance policy or policies in a solvent and responsible company or companies * * * of not less than Five Hundred Thousand Dollars * * * to any single person and in the aggregate of not less than One Million Dollars * * * on account of any single accident”. Kel Kim obtained the required insurance coverage and for six years operated the facility without incident. In November 1985 its insurance carrier gave notice that the policy would expire on January 6, 1986 and would not be renewed due to uncertainty about the financial condition of the reinsurer, which was then under the management of a court-appointed administrator. Kel Kim transmitted this information to defendants and, it asserts, thereafter made every effort to procure the requisite insurance elsewhere but was unable to do so on account of the liability insurance crisis. Plaintiff ultimately succeeded in obtaining a policy in the aggregate amount of $500,000 effective March 1, 1986 and contends that no insurer would write a policy in excess of that amount on any roller skating rink. As of August 1987, plaintiff procured the requisite coverage.
On January 7, 1986, when plaintiff’s initial policy expired and it remained uninsured, defendants sent a notice of default, directing that it cure within 30 days or vacate the premises. Kel Kim and the individual guarantors of the lease then began this declaratory judgment action, urging that they should be excused from compliance with the insurance provision either because performance was impossible or because the inability to procure insurance was within the lease’s force *902 majeure clause.* Special Term granted defendants’ motion for summary judgment, nullified the lease, and directed Kel Kim to vacate the premises. A divided Appellate Division affirmed.
Generally, once a party to a contract has made a promise, that party must perform or respond in damages for its failure, even when unforeseen circumstances make performance burdensome; until the late nineteenth century even impossibility of performance ordinarily did not provide a defense (Calamari and Perillo, Contracts § 13-1, at 477 [2d ed 1977]). While such defenses have been recognized in the common law, they have been applied narrowly, due in part to judicial recognition that the purpose of contract law is to allocate the risks that might affect performance and that performance should be excused only in extreme circumstances (see, Wallach, The Excuse Defense in the Law of Contracts: Judicial Frustration of the U.C.C. Attempt to Liberalize the Law of Commercial Impracticability, 55 Notre Dame Law 203, 207 [1979]). Impossibility excuses a party’s performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible. Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract (see, 407 E. 61st Garage v Savoy Fifth Ave. Corp., 23 NY2d 275; Ogdensburg Urban Renewal Agency v Moroney, 42 AD2d 639).
Applying these principles, we conclude that plaintiff’s predicament is not within the embrace of the doctrine of impossibility. Kel Kim’s inability to procure and maintain requisite coverage could have been foreseen and guarded against when it specifically undertook that obligation in the lease, and therefore the obligation cannot be excused on this basis.
For much the same underlying reason, contractual force majeure clauses — or clauses excusing nonperformance due to circumstances beyond the control of the parties — under the common law provide a similarly narrow defense. Ordinarily, only if the force majeure clause specifically includes the event that actually prevents a party’s performance will that party *903 be excused. (See, e.g., United Equities Co. v First Natl. City Bank, 41 NY2d 1032; Squillante & Congalton, Force Majeure, 80 Com LJ 4 [1975].) Here, of course, the contractual provision does not specifically include plaintiffs inability to procure and maintain insurance. Nor does this inability fall within the catchall "or other similar causes beyond the control of such party.” The principle of interpretation applicable to such clauses is that the general words are not to be given expansive meaning; they are confined to things of the same kind or nature as the particular matters mentioned (see, 18 Williston, Contracts § 1968, at 209 [3d ed 1978]).
We agree with the conclusion reached by the majority below that the events listed in the force majeure clause here are different in kind and nature from Kel Kim’s inability to procure and maintain public liability insurance. The recited events pertain to a party’s ability to conduct day-to-day commercial operations on the premises. While Kel Kim urges that the same may be said of a failure to procure and maintain insurance, such an event is materially different. The requirement that specified amounts of public liability insurance at all times be maintained goes not to frustrated expectations in day-to-day commercial operations on the premises — such as interruptions in the availability of labor, materials and utility services — but to the bargained-for protection of the landlord’s unrelated economic interests where the tenant chooses to continue operating a public roller skating rink on the premises.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs, in a memorandum.

 The clause reads: "If either party to this Lease shall be delayed or prevented from the performance of any obligation through no fault of their own by reason of labor disputes, inability to procure materials, failure of utility service, restrictive governmental laws or regulations, riots, insurrection, war, adverse weather, Acts of God, or other similar causes beyond the control of such party, the performance of such obligation shall be excused for the period of the delay.”