■ LAWRENCE E. LAGARENNE, Respondent, v JACK S. INGBER et al., Appellants. [710 NYS2d 425] —Peters, J. Appeals from two judgments of the Supreme Court (Hughes, J.), entered June 23, 1999 and June 28, 1999 in Sullivan County, upon a decision of the court partially in favor of plaintiff.

The parties entered into a written partnership agreement in October 1988 wherein defendant Jack S. Ingber (hereinafter defendant) and plaintiff were to each receive 37.5% of the partnership's net proceeds and defendant Keith G. Ingber (hereinafter Ingber) received a 25% interest.[1] By agreement dated January 1, 1993, effective January 1, 1992, the percentages were changed to a 35% interest for both plaintiff and defendant and a 30% interest for Ingber, until its unilateral termination by defendant on June 28, 1993.

Underlying defendant's termination of the partnership was a real estate investment made in March 1983 wherein plaintiff and defendant, for themselves and as nominees for three other investors, acquired a 15-acre parcel (hereinafter the Zolchonock parcel). In June 1984, plaintiff and defendant, for themselves and as nominees for the same three investors, took title to an adjoining 50-acre parcel (hereinafter the Nesin parcel). In October 1984, their interests in these parcels were increased to

---

1. Defendant and plaintiff had been law partners for over 25 years prior to the execution of this agreement with Ingber.

a one-quarter interest in each in connection with the resolution of a fee dispute with defendant's brother, one of the aforementioned investors.

On October 22, 1986, plaintiff and defendant entered into a written agreement, prepared by plaintiff, to make further monetary adjustments based upon their inequitable resolution of the fee dispute with defendant's brother. It reflected that plaintiff owed defendant a gross adjustment of $100,000 and that the total amount then due was $85,000. It thereafter detailed that as follows: "The said sum of $85,000.00 without interest shall be paid by [plaintiff] to [defendant] out of proceeds of future sales of portions of the premises described in the said Zolchonock deed at the rate of fifty (50%) per cent of the net share of proceeds from such sales which may become due and payable to [plaintiff] until the said sum of $85,000.00 without interest is fully paid." No modifications were ever made to such agreement and it is undisputed that plaintiff made payments thereunder which did not derive from proceeds of sales of portions of the Zolchonock parcel.

Owners of both these parcels began negotiations regarding the commercial development of the Zolchonock parcel as a shopping center. In connection therewith, a letter of intent, dated January 6, 1989, was signed by all owners wherein it was agreed that the Zolchonock parcel was to be the contribution of the owners toward the development of that project for a period of one year. It acknowledged the existence of the contiguous Nesin parcel and agreed that "[i]n view of this discussion[ ] * * * as to possible development of that * * * parcel, we have taken * * * [it] off the market pending our further discussions". By that time, plaintiff had made additional payments to defendant which reduced the balance of his debt to $60,000.

The parties thereafter received a condemnation award of approximately $105,000 for a portion of the Zolchonock parcel of which plaintiff's portion was approximately $27,000. By then, defendant was deep in personal financial debt fueling vehement disputes with plaintiff about the moneys still owed. Defendant insisted that he receive plaintiff's full share of the proceeds. When plaintiff refused, defendant made a demand not only for the full amount of plaintiff's share but also for interest. Plaintiff instead proffered a payment of $15,000 toward the $60,000 debt. Defendant rejected the payment by letter dated June 24, 1993 which also advised of the termination of the law partnership. Without the issue of interest definitively resolved, plaintiff paid the full amount of his outstanding debt to defendant.

Plaintiff commenced this action against defendants, individually and doing business as Ingber & Ingber, asserting numerous causes of action which prompted defendants' answer with counterclaims seeking, *inter alia*, a rescission or cancellation of the October 22, 1986 agreement. After a bench trial, Supreme Court found that there was no basis for a rescission or cancellation of the agreement and, therefore, no entitlement to interest on the money that was owed to defendant. The court further concluded that Ingber was not entitled to draw adjustments for 1991 and 1992 and that there existed no basis upon which sanctions should be imposed upon plaintiff. This appeal ensued.[2]

Addressing first the provisions of the October 22, 1986 agreement, we note that by the plain and precise language employed therein, the parties clearly detailed that it was their intention that the debt would be repayable to defendant without interest (*see, Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584). Notwithstanding this enforceable contract, defendant asserts that the January 6, 1989 letter of intent requires the contract to be set aside due to impossibility of performance since no proceeds from the Zolchonock parcel could be generated if it was held by the letter of intent.

The vitiation of a contract based upon impossibility of performance is rarely imposed and will be applicable only in those circumstances "when the destruction of the subject matter * * * or the means of performance makes performance objectively impossible. Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract" (*Kel Kim Corp. v Central Mkts.*, 70 NY2d 900, 902; *see, Comprehensive Bldg. Contrs. v Pollard Excavating*, 251 AD2d 951, 952; *Ahlstrom Mach. v Associated Airfreight*, 251 AD2d 852, 853-854). In light of the fact that this contract was entered into by two seasoned attorneys, that it specified no time period during which the money had to be repaid, that the property could have remained on the market for a prolonged period of time despite the existence in the letter of intent and that no modification of such agreement was sought prior to plaintiff and defendant becoming signatories on the letter of intent which itself only had a one-year term, we agree that no viable claim was presented.

Similarly unavailing are defendants' claims of a lack of

**2.** Notwithstanding the fact that the notice of appeal recites its exception to each and every part of the two judgments and bill of costs entered thereon, the issues raised on appeal were limited by defendants to those detailed above.

consideration or substantial nonperformance. Despite plaintiff's knowledge of defendant's personal loan obligations with a high rate of interest, this contract settled a firm debt between them precipitated by a fee dispute with defendant's brother. Further, as plaintiff substantially reduced this debt with moneys derived from sources other than proceeds of sales from the Zolchoneck parcel, we decline further review.

Turning to the allegations of mutual mistake, unconscionability or a breach of a fiduciary duty, we find them unsupported. "When a contract does not violate public policy and its effect is not so onerous as to shock the conscience, a party will not be relieved of the duty to abide by the contract merely because it is a burdensome bargain" (*Loyalty Life Ins. Co. v Fredenberg*, 214 AD2d 297, 300). As the record is bereft of any evidence indicating anything other than a fair and equitable bargaining position between these parties at the time of execution, their later disagreement as to the meaning of "proceeds" after substantial part payments were made thereunder, without interest or dispute, will not support a claim of mutual mistake of fact (*see, Schultz v Hourihan*, 238 AD2d 818), breach of a fiduciary duty (*see, Maas v Cornell Univ.*, 245 AD2d 728, 730) or unconscionability (*see, Loyalty Life Ins. Co. v Fredenberg, supra*, at 300).

Defendants' contention that Ingber was entitled to draw adjustments for 1991 and 1992 will be reviewed despite a failure to counterclaim for this relief since an adjustment could alter the judgment to plaintiff on claimed overdraws. Defendants testified that an oral agreement provided that if Ingber's annual draw was less than $60,000 in any one year, an adjustment would be made to increase his draw. David Jaffee, the partnership's accountant, recalled some discussion of this accommodation when Ingber became a partner but could not recall any specific agreement. Plaintiff also remembered discussion on this issue but also could not recall a specific agreement. As these discussions took place at the time that the 1988 partnership agreement was being drafted, yet neither that agreement nor any of the later amended agreements included this adjustment provision, we cannot find that Supreme Court, in its assessment of the testimony before it (*see, Winkler v Kingston Hous. Auth.*, 259 AD2d 819, 823), erred in its determination.

Finding no error in the further discretionary determination that no basis existed for the imposition of sanctions pursuant to 22 NYCRR 130-1.1 (c) (1) or (2) (*see, Vinci v Northside Partnership*, 250 AD2d 965, 966), we affirm Supreme Court's judgments.

Cardona, P. J., Mercure, Spain and Carpinello, JJ., concur. Ordered that the judgments are affirmed, with costs.