The **CHASE MANHATTAN BANK, as Indenture Trustee, under the Indenture, dated as of May 6, 1998, Plaintiff–Appellee,**

v.

**TRAFFIC STREAM (BVI) INFRASTRUCTURE LIMITED, Defendant–Appellant.**

No. 00–7721.

United States Court of Appeals, Second Circuit.

Originally submitted Dec. 1, 2000.

Final submission Dec. 18, 2000.

Decided May 24, 2001.

Sarah L. Reid, Kelley Drye & Warren LLP,(Joseph N. Froehlich, of counsel) New York, NY, for Plaintiff–Appellee.

Shmuel Vasser, Skadden, Arps, Slate, Meagher & Flom LLP (George A. Zimmerman, of counsel) New York, NY, for Defendant–Appellant.

Before McLAUGHLIN and SACK, Circuit Judges, and CHATIGNY, District Judge.[*]

PER CURIAM:

## BACKGROUND

Traffic Stream (BVI) Infrastructure Limited ("Traffic Stream"), incorporated in the British Virgin Islands, is the parent of four wholly owned Hong Kong subsidiaries. Through these subsidiaries, Traffic Stream owns interests in thirteen Chinese-foreign cooperative joint ventures. Each joint venture is a partnership between one of the Hong Kong subsidiaries and a Chinese partner. The joint ventures are all engaged in the development, construction, and operation of six toll-road projects in China.

The contracts governing the joint ventures guarantee the Hong Kong subsidiaries a fixed annual return on their investments in the toll-road projects. If the operating income generated by a joint venture is less than the fixed annual rate of return, the Chinese partner is obligated to pay the difference to the Hong Kong subsidiary from its own funds. According to Traffic Stream, its income derives "solely and ultimately" from the joint ventures.

In order to finance these joint ventures, Traffic Stream entered into an Indenture with The Chase Manhattan Bank ("Chase"), a New York Corporation, on May 6, 1998. Pursuant to the Indenture, Traffic Stream issued 14 ¼ percent Notes in an aggregate amount of $199,000,000 which are due in 2006. The Indenture requires Traffic Stream to make semi-annual interest payments on the Notes in May and November of each year, commencing in November 1998. Additionally, Traffic Stream executed a Letter of Credit Procurement and Deposit Agreement according to which it promised to deliver a letter of credit in the amount of $8,058,750 to Chase by January 6, 1999, and to replace the letter of credit by depositing $8,058,750 into a Construction Funding Account on or before May 6, 1999.

The Indenture provided that it was to "be governed by and construed in accordance with" New York law. Traffic Stream agreed by its terms to submit "to the jurisdiction of any court of the State of New York or any United States federal court sitting in the Borough of Manhattan, New York City, New York, United States, and any appellate court from any thereof."

Traffic Stream made its first required interest payment on November 1, 1998. It is undisputed that Traffic Stream thereafter committed multiple defaults.

In response to these defaults, on June 4, 1999, Chase began this action in the United States District Court for the Southern District of New York on the basis of "alienage jurisdiction" grounded on the status of the plaintiff as a New York corporation and the defendant as a British Virgin Islands corporation. See § 1332(a). The complaint set forth five claims, all under New York law: (1) breach of contract; (2) replevin of collateral; (3) specific enforcement of defendant's reporting obligations; (4) an accounting; and (5) recovery of costs for collection.

Traffic Stream concedes that, at least technically, it has committed defaults un-

[*] The Honorable Robert N. Chatigny, of the United States District Court for the District of Connecticut, sitting by designation.

der the Indenture. It asserts, however, that these defaults, which underlie the breach of contract and replevin claims, are excused by the legal defense of impossibility. Chase responds, *inter alia,* that the impossibility defense is for various reasons unavailable to Traffic Stream.

On January 31, 2000, the district court (Shira A. Scheindlin, *Judge*) granted Chase's motion for summary judgment. *See Chase Manhattan Bank v. Traffic Stream (BVI) Infrastructure Ltd.,* 86 F.Supp.2d 244 (S.D.N.Y.2000). The court concluded that § 501 of the Indenture barred Traffic Stream's impossibility defense. *Id.* at 256–59. It further held that even if § 501 did not bar the defense, Traffic Stream did not meet the "objectively impossible" element of that defense and that New York does not recognize a defense based on financial impossibility. *Id.* at 259–61. A deficiency judgment in favor of Chase in the amount of $98,388,352.74 was therefore entered on May 9, 2000.

Traffic Stream appeals.

## DISCUSSION

■■■ "It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700 (2d Cir.2000). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte.* If subject matter jurisdiction is lacking, the action must be dismissed." *Id.* at 700–01 (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986); *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994)).

■■■ Chase's claims against Traffic Stream arise under state law. The federal courts have subject matter jurisdiction over such claims if, *inter alia,* the parties are "(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; [or] (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a). The district court in the case at bar proceeded under § 1332(a)(2) on the apparent, unchallenged assumption that Traffic Stream is a "citizen[ ] or subject[ ] of a foreign state"—the United Kingdom or the British Virgin Islands.

In *Matimak Trading Co. v. Khalily,* 118 F.3d 76 (2d Cir.1997), *cert. denied,* 522 U.S. 1091, 118 S.Ct. 883, 139 L.Ed.2d 871 (1998), we held that a plaintiff corporation organized under the laws of Hong Kong did not qualify as a "citizen[ ] or subject[ ] of a foreign state" under § 1332(a)(2). At the time of the suit, Hong Kong was a British Dependent Territory. We concluded that "the United States does not regard Hong Kong as an independent, sovereign political entity," and the plaintiff was therefore not a "citizen[ ] or subject[ ] of a foreign state" by virtue of its incorporation in Hong Kong. *Id.* at 82. Under British law, we further held, the plaintiff was not a citizen or subject of the United Kingdom. *Id.* at 85, 86. We therefore decided that the plaintiff Hong Kong corporation was technically "stateless" and that "a stateless person—the proverbial man without a country—cannot sue a United States citizen under alienage jurisdiction." *Id.* at 86.

Similarly, in *Koehler v. Bank of Bermuda (New York) Ltd.,* 209 F.3d 130, *rehearing in banc denied,* 229 F.3d 187 (2d Cir. 2000); the defendants were Bermuda corporations and an individual with Bermuda citizenship. Bermuda at the time of suit, like Hong Kong at the time of *Matimak,*

was a British Dependent Territory. We therefore concluded that "*Matimak* governs the jurisdictional issue in this case" and that "[t]he district court therefore lacked subject matter jurisdiction over the state law claims against the Bermuda defendants." *Id.* at 139. *See also Universal Reinsurance Co. v. St. Paul Fire and Marine Ins. Co.*, 224 F.3d 139, 140–41 (2d Cir.2000) (Bermuda corporation could not bring suit in federal court on the basis of alienage jurisdiction) (citing *Koehler* and *Matimak* ).

Because Traffic Stream is a British Virgin Islands corporation and the parties had not briefed the issue of alienage jurisdiction on appeal, we requested at oral argument that the parties submit supplemental briefs addressing whether the district court had subject matter jurisdiction over this case in light of the *Matimak* line of cases. Each party submitted such a brief.

The British Virgin Islands is a British Dependent Territory, as Hong Kong was at the time of *Matimak* and Bermuda was at the time of *Koehler* and *Universal Reinsurance.* (It is, to be precise, a United Kingdom or British "Overseas Territory," but that is simply a new name for "British Dependent Territory." [1]) Nothing relevant to the alienage jurisdiction inquiry has changed since we decided those appeals.[2] We are bound to hold that Traffic Stream is not a citizen or subject of a foreign state and that the district court

therefore had no alienage jurisdiction over this action under § 1332(a)(2). No other basis for jurisdiction has been asserted by either party. Federal jurisdiction being absent, the action must be dismissed.

## CONCLUSION

Traffic Stream is not a "citizen[ ] or subject[ ] of a foreign state" under 28 U.S.C. § 1332(a)(2), and there is no other basis for federal jurisdiction over this lawsuit. Accordingly, we reverse the judgment of the district court and remand with instructions for the district court to dismiss the complaint without prejudice.

---

1. In February 1998, the United Kingdom Government announced that all "Dependent Territories" would in the future be known as "Overseas Territories." There is no practical difference between the term "Overseas Territory" used here in reference to the British Virgin Islands and the term "Dependent Territory." Nor is there any practical difference between these terms and the terms "dependency," "colony," or "crown colony."

Brief *amicus curiae* for the United Kingdom, 1 n. 2, *ART 57 Prop., Inc. v. 57 BB Prop.,*

*L.L.C., et al.* No. 99–10385 (5th Cir.2000) (reported at 212 F.3d 596 (table)).

2. The source material supplied to us by Chase in support of its supplemental brief on the issue of alienage jurisdiction was apparently available to and considered by Judge Sotomayor in writing the opinion in dissent from denial of rehearing in banc in *Koehler. See Koehler*, 229 F.3d 187, 188 n. 3 (2d Cir.2000) (Sotomayor, J., with whom Leval and Calabresi, JJ., joined, dissenting from denial of rehearing in banc).