The CHASE MANHATTAN BANK,
Plaintiff–Appellee,

v.

TRAFFIC STREAM (BVI) INFRA-
STRUCTURE LIMITED, De-
fendant–Appellant.

Docket No. 00–7721.

United States Court of Appeals,
Second Circuit.

Nov. 20, 2002.

Craig J. Albert, Reitler Brown LLC, New York, NY, for Appellant.

Sarah L. Reid, Kelley Drye & Warren LLP, New York, NY, for Appellee.

Present McLAUGHLIN, SACK, Circuit Judges, and CHATIGNY,* District Judge.

* of the United States District Court for the  District of Connecticut, sitting by designation.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is, AFFIRMED.

Plaintiff-appellee Chase Manhattan Bank ("Chase"), acting as trustee, and defendant-appellant Traffic Stream (BVI) Infrastructure Limited ("Traffic Stream") entered into an indenture agreement on May 6, 1998. Pursuant to this agreement, Traffic Stream issued notes in an aggregate amount of $119,000,000 to various holders to finance a business venture involving the construction of toll roads in the People's Republic of China. On June 4, 1999, Chase commenced litigation in the United States District Court for the Southern District of New York against Traffic Stream, contending that Traffic Stream defaulted on its obligations under the indenture agreement and seeking, *inter alia,* immediate repayment of the indebtedness including both principal and interest. The district court (Shira A. Scheindlin, *Judge*) granted Chase's motion for summary judgment, *Chase Manhattan Bank v. Traffic Stream (BVI) Infrastructure Ltd.,* 86 F.Supp.2d 244 (S.D.N.Y.2000), and subsequently ordered a deficiency judgment against Traffic Stream in the amount of $98,388,352.74, *Chase Manhattan Bank v. Traffic Stream (BVI) Infrastructure Ltd.,* No. 99–CIV–4056, 2000 WL 573232, 2000 U.S. Dist. LEXIS 6392 (S.D.N.Y. May 10, 2000).

Traffic Stream appealed. We reversed the judgment of the district court and remanded with instructions to dismiss the complaint without prejudice for lack of jurisdiction. *Chase Manhattan Bank v. Traffic Stream (BVI) Infrastructure Ltd.,* 251 F.3d 334, 337 (2d Cir.2001) (per curiam). Relying on our case law, we concluded that Traffic Stream, incorporated in the British Virgin Islands, a British Overseas Territory, was not a citizen or subject of a foreign state for purposes of 28 U.S.C. § 1332(a)(2) alienage jurisdiction. *Id.* Chase sought a writ of certiorari from the United States Supreme Court, which was granted. The Supreme Court reversed our judgment, holding that Traffic Stream is a subject of a foreign state, the British Virgin Islands, for purposes of alienage jurisdiction. *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.,* 536 U.S. 88, 122 S.Ct. 2054, 153 L.Ed.2d 95 (2002). We then invited and received submission of supplementary letter briefs addressing the merits of this action.

Traffic Stream is the parent of four wholly owned subsidiaries, incorporated in Hong Kong, which allegedly constitute Traffic Stream's sole assets and sole source of income. *Chase Manhattan Bank,* 86 F.Supp.2d at 247. These Hong Kong subsidiaries own interests in thirteen Chinese foreign cooperative ventures, which are engaged in the development, construction and operation of six toll road projects in China. *Id.* The foreign cooperative ventures guarantee the Hong Kong subsidiaries a fixed annual return on their investment in the toll road projects. The foreign cooperative ventures are obligated to pay the Hong Kong subsidiaries from their own funds should the toll road's operating income not suffice to meet the fixed annual return. *Id.* at 250.

In 1994, long before the parties entered into the indenture agreement, China's State Administration of Foreign Exchange ("SAFE") issued a notice prohibiting the Chinese party in a Chinese foreign cooperative joint venture from guaranteeing the foreign party's investment return. *Id.* at 251. In November 1998, SAFE became more aggressive in enforcing its earlier edict, and issued a notice allegedly to the effect that income obtained by foreign parties in Chinese foreign cooperative joint ventures can be remitted abroad only after

obtaining approval from SAFE. *Id.* at 252. The Chinese foreign cooperative joint ventures in which Traffic Stream has an interest applied to SAFE for approval of remittance to the Hong Kong subsidiaries of both the toll road's operating income and the additional guaranteed income. *Id.* at 252–53. SAFE approved remittance of the operating income within two weeks, but did not timely approve remittance of the guaranteed income. *Id.*

Traffic Stream argues that this default should be excused under the doctrine of impossibility, because the change in Chinese policy delayed its ability to collect from the toll road projects, making it "impossible" for Traffic Stream to make its semiannual interest payments as required by the indenture. We agree with Chase and the district court that Traffic Stream waived the ability to raise the impossibility defense, and that in any event, Traffic Stream has not alleged facts sufficient to maintain such a defense.

■ Section 501 of the indenture agreement explicitly provides that:

> "Event of Default", wherever used herein means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule regulation of any administrative or governmental body).

This section is a boilerplate provision, and must therefore be interpreted as a matter of law. *Sharon Steel Corp. v. Chase Manhattan Bank*, 691 F.2d 1039, 1048 (2d Cir. 1982). We conclude that § 501 unambiguously anticipates the risk of adverse government action and assigns that risk to Traffic Stream, barring Traffic Stream from claiming impossibility due to adverse government action. Traffic Stream's arguments that § 514 and § 1025 of the indenture agreement implicitly preserve the impossibility defense are unavailing.

■ Furthermore, even had Traffic Stream not waived its ability to claim impossibility, we conclude that Traffic Stream has not alleged facts sufficient to maintain such a defense. It is well settled New York law that "[i]mpossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible. Moreover the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *Kel Kim Corp. v. Cent. Mkts., Inc.*, 70 N.Y.2d 900, 902, 519 N.E.2d 295, 296, 524 N.Y.S.2d 384, 385 (1987). "[W]here impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of insolvency or bankruptcy, performance of a contract is not excused." *407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 23 N.Y.2d 275, 281, 244 N.E.2d 37, 41, 296 N.Y.S.2d 338, 344 (1968). Traffic Stream's alleged impossibility or difficulty of performance is occasioned by hardship that is purely financial, and, in light of SAFE's 1994 notice, arguably foreseeable, and therefore insufficient to establish impossibility of performance under New York law.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.