OPINION OF THE COURT
Debra A. James, J.
This landlord-tenant action arises out of a leasehold at One World Trade Center (the building) which was terminated by the tragic events of September 11, 2001. The events that occurred on that infamous date are not directly implicated in this action. Plaintiff One World Trade Center was the net lessee of the building and defendants Cantor Fitzgerald Securities, Cantor Fitzgerald, L.E, and Cantor Fitzgerald Incorporated (collectively, Cantor Fitzgerald) were lessees in the building.
Pursuant to a lease agreement dated October 12, 1978, defendants’ predecessor-in-interest Cantor Fitzgerald Securities Corp. leased space within the building (the premises) from the Port Authority. Between 1978 and 2000, supplemental agreements to the lease were entered into between the Port Authority and defendants including supplement No. 12 to the lease dated November 30, 2000. (The lease and its supplements are collectively referred to herein as the lease.)
Plaintiff One World Trade Center LLC leased the building from the Port Authority of New York and New Jersey pursuant to a net lease agreement dated July 16, 2001. Plaintiff states that the net lease became effective July 24, 2001, and that as of that date the lease was assigned to plaintiff by the Port Authority.
Plaintiff in this action seeks to recover from defendants rent and additional rent for the premises pursuant to the lease for the period from August 1, 2001 through September 10, 2001. Plaintiff alleges in its complaint that defendants were in arrears on the payment of rent to the Port Authority at the time the net lease took effect and that plaintiff received a rent payment from defendants in August 2001 and applied that rent payment to the alleged arrears leaving a balance due that is sued for in this action. Defendants have answered and denied plaintiffs *384 claims, raised various affirmative defenses and asserted counterclaims for rescission and unjust enrichment.
Plaintiff now moves for summary judgment granting the relief sought in its complaint and dismissing defendants’ counterclaims. Plaintiff also moves to quash certain subpoenas issued by defendants. Defendants oppose plaintiffs motion.
Plaintiffs motion for summary judgment on the complaint must be denied. Plaintiff argues that it received a rent payment in August 2001 and that the payment had to be applied to rental arrears defendants allegedly owed to the Port Authority as of the date the net lease became effective. Defendants argue that the records that they currently have demonstrate that they paid more than the basic rental amount due under the lease for the period from December 1, 2000 to September 10, 2001, and that the amount of additional rent due for that period is not readily discernible. Defendants also argue that because their records were destroyed and key personnel killed in the tragedy, discovery from third parties is required in order to determine the amount of rent that may be due and owing, if any.
The court agrees with defendants that plaintiff has failed to carry its burden of demonstrating that defendants failed to pay the rent due on the premises. Plaintiffs claim for rent is based upon its assertion that defendants were in arrears on their payment of rent to the Port Authority prior to the effectiveness of the net lease. Plaintiff, however, introduces insufficient evidence to establish that there was an arrearage at the time the net lease became effective. There is no affidavit or other evidence from the Port Authority establishing that defendants were in default at that time. Therefore, plaintiff has not established that its application of the August 2001 payment to the alleged arrearage was in fact proper. This issue of fact is contested by the parties and therefore summary judgment on the claims asserted in the complaint is properly denied.
Plaintiff also seeks dismissal of defendants’ counterclaims and affirmative defenses for unjust enrichment and rescission. Defendants argue that because of the 9/11 tragedy, they are entitled to the remedies of rescission and unjust enrichment because the plaintiff will not be able to provide them with the future benefits which were the consideration for the defendants’ ratification of supplement No. 12 to the lease dated November 30, 2000. According to the defendants, pursuant to supplement No. 12, they agreed to pay an increased, “front-loaded” rent and agreed to restricted termination rights in exchange for *385 future benefits including a fixed rental rate, restricted rights to terminate the lease, dedicated screening station in the lobby of the building, and permission for defendants to install a tenant identification sign in the lobbies. Defendants argue that there are outstanding issues of fact as to these counterclaims which preclude their summary dismissal.
Plaintiff counters that defendants’ counterclaims are barred by the express terms of the lease. Section 39 of the lease states:
“Force Majeure The Port Authority shall not be liable for any failure, delay or interruption in performing its obligations hereunder due to causes or conditions beyond the control of the Port Authority. Further, the Port Authority shall not be liable unless the failure, delay or interruption shall result from failure on the part of the Port Authority to use reasonable care to prevent or reasonable efforts to cure such failure, delay or interruption.”
Section 36 (d) of the lease provides that:
“ ‘Causes or conditions beyond the control of the Port Authority,’ shall mean and include acts of God . . . war . . . acts of third parties for which the Port Authority is not responsible ... or any other condition or circumstances, whether similar to or different from the foregoing (it being agreed that the foregoing enumeration shall not limit or be characteristic of such conditions or circumstances) which is beyond the control of the Port Authority or which could not be prevented or remedied by reasonable effort and at reasonable expense.”
Plaintiff argues that defendants’ counterclaims seeking recoupment of that portion of the increased rent allegedly paid in contemplation of future benefits under the lease is barred by these clauses which expressly excuse the performance of the lessor under circumstances such as those presented by the events of September 11, 2001.
The court agrees with plaintiff that the force majeure clause bars defendants’ counterclaims. Defendants’ argument that their counterclaims are outside the operation of the lease because they equitably seek to rescind the lease on the contractual grounds of failure of consideration and unjust enrichment is unavailing.
Defendants’ counterclaims essentially seek a rent abatement for services that cannot be provided due to the destruction of *386 the building. The court agrees with plaintiff that there is no language in the lease which can form the basis for a claim by defendants that any allegedly increased “front-loaded” rent under the lease was conditioned upon the provision of future services. The defendants are sophisticated commercial tenants and there is no reason to excuse them from the operation of the force majeure clause which they freely negotiated. Defendants bargained away their right to hold the lessor liable for nonperformance in the face of the tragic, unanticipated events which destroyed the building.
The sole case cited by defendants in support of their position that the force majeure clause is inapplicable, Park W. Mgt. Corp. v Mitchell (62 AD2d 291, 296 [1st Dept 1978]), fails to support defendants’ position as that case involved the interpretation of a residential tenant’s rights under Real Property Law § 235-b. The general rule is that “[o]rdinarily, only if the force majeure clause specifically includes the event that actually prevents a party’s performance will that party be excused.” (Kel Kim Corp. v Central Mkts., 70 NY2d 900, 902-903 [1987].) In this case, the force majeure specifically shields the lessor from liability for any nonperformance that results from the acts of third parties, and therefore bars defendants’ counterclaims for a refund of rent.
As to defendants’ counterclaim for unjust enrichment, it similarly is barred because even assuming that the rental rate in effect prior to the destruction of the building was “increased” in contemplation of future benefits under the lease, there is no provision in the lease for recoupment of such payments where the lessor’s future performance is rendered impossible due to the destruction of the building without any fault of plaintiff. As stated long ago by the First Department,
“If by the terms of [the] lease rent is to be paid in advance, the tenant comes under an absolute engagement to pay it on the day fixed, and he is not relieved from that engagement by the fact that the property is destroyed . . . and [tenant] is liable to pay the rent due in advance even though the destruction takes place on the very day it falls due.” (Werner v Padula, 49 App Div 135, 138 [1st Dept 1900].)
With respect to plaintiff’s motion to quash defendants’ subpoenas in their entirety, the court shall deny plaintiffs motion as presented here and directs the defendants to comply *387 with this court’s separate order of this same date resolving defendants’ motion (motion sequence No. 2) seeking issuance of a third-party subpoena.
Accordingly, it is ordered and adjudged that plaintiffs motion for summary judgment dismissing defendants’ counterclaims and the fifth affirmative defense seeking rescission and the sixth affirmative defense of unjust enrichment is granted and the clerk is directed to enter judgment accordingly; and it is further ordered and adjudged that plaintiffs motion for summary judgment is otherwise denied; and it is further ordered and adjudged that plaintiff’s motion to quash is denied and defendants are directed to comply with this court’s separate order of this same date resolving motion sequence No. 2.