[979 NYS2d 587]

HILARY KOLODIN, Also Known as HILARY KOLE, Respondent, v
JOHN R. VALENTI et al., Appellants, et al., Defendant.

First Department, February 6, 2014

## APPEARANCES OF COUNSEL

*Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP*, New York City (*Andrea Bierstein, Paul J. Hanly, Jr.* and *Jayne Conroy* of counsel), for appellants.

*Lewis and Garbuz, P.C.*, New York City (*Lawrence I. Garbuz, Adina Lewis* and *Michael Andrews* of counsel), for respondent.

## OPINION OF THE COURT

Acosta, J.P.

This case, apparently one of first impression, aptly illustrates the well-known axiom that cautions against mixing

business with pleasure. The question presented is whether a so-ordered stipulation, agreed upon by plaintiff and defendant Valenti in Family Court and which precludes all contact between them except by counsel, renders impossible the performance of two prior contracts between plaintiff and Jayarvee, Inc., Valenti's artist management company. We hold that it does.

Plaintiff is a well-known professional jazz singer. Valenti is the sole shareholder and president of Jayarvee, a corporation that manages musical artists, produces musical recordings, and owns and operates the well-known jazz club Birdland. Plaintiff and Valenti met in 2003 while plaintiff was performing at Birdland, and the two quickly kindled a romantic relationship. By early 2004, plaintiff had moved into Valenti's Manhattan apartment. They became engaged that year, and for some years held themselves out as husband and wife, although they never married. They also developed a professional relationship, many details of which are still at issue in Supreme Court.

By 2011, the couple's personal relationship had deteriorated. Plaintiff alleges that in or about March 2011, Valenti obtained her private electronic materials—in part by physically overpowering her—and subsequently made repeated threats to release those materials to the public. He allegedly stated that he would ruin plaintiff's professional career and personal life by posting the data on the internet.

Despite the ongoing personal drama between plaintiff and Valenti, their professional relationship continued. Plaintiff and Jayarvee—with Valenti signing as the company's president—entered into a recording contract and a management contract in April 2011 and June 2011, respectively. Plaintiff moved out of their shared residence in May 2011.

Nonetheless, in October 2011, plaintiff commenced a Family Court proceeding in which she sought an order of protection against Valenti. The court granted a temporary order of protection that, inter alia, prevented Valenti from contacting plaintiff, either directly or through third parties. The order was extended on consent several times through June 2012.

Plaintiff commenced the instant action on November 21, 2011—while the Family Court proceeding was pending—against Valenti, Jayarvee, and plaintiff's accountant, Howard Weiss (who is not a party to this appeal). Among other things, plaintiff sought rescission of the contracts and a declaration that Jayarvee was in breach. In April 2012, defendants answered, Valenti counterclaimed for the return of an engagement ring he

had given to plaintiff, and Jayarvee counterclaimed for breach of the contracts. Defendants then moved for a default judgment against plaintiff for failure to timely respond to the counterclaims; the motion was ultimately denied. In their verified answer, Valenti and Jayarvee—and Valenti, in his affidavit in support of defendants' motion for default—argued that the temporary order of protection had made performance of the contracts impossible.

Plaintiff and Valenti resolved the Family Court matter on June 13, 2012, by entering into a stipulation, so-ordered by the court. Under the terms of the stipulation, plaintiff withdrew her petition without prejudice, and both parties agreed to have no further contact with each' other. The stipulation specified that "[n]o contact shall include no third party contact, excepting counsel." Following that provision, there is language, visibly crossed out, that would have allowed for contact by "other individuals at Jayarvee or [Valenti's] place of business."

Thereafter, plaintiff moved for partial summary judgment on her claims for rescission of the contracts. Supreme Court granted the motion and declared both contracts terminated on the ground of impossibility. We now affirm.

"Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible. Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract" (*Kel Kim Corp. v Central Mkts.*, 70 NY2d 900, 902 [1987]). The excuse of impossibility is generally "limited to the destruction of the means of performance by an act of God, *vis major*, or by law" (*407 E. 61st Garage v Savoy Fifth Ave. Corp.*, 23 NY2d 275, 281 [1968]).

In this case, performance of the contracts at issue has been rendered objectively impossible by law, since the stipulation destroyed the means of performance by precluding all contact between plaintiff and Valenti except by counsel. Defendants argue that the stipulation precludes only direct contact between plaintiff and Valenti. However, while it may be inartfully drafted, there can be no question that the stipulation precludes contact via third parties as well.

Because of Valenti's central role in the operation of Jayarvee, performance of the contracts would necessarily require his input and, consequently, a violation of the stipulation. The recording and management contracts are for personal services, so they

require substantial and ongoing communication between plaintiff and Jayarvee. In his sworn affidavit, Valenti identifies himself as the "sole shareholder and President" of Jayarvee. Moreover, Jayarvee is a relatively small organization, with approximately 40 employees, and Valenti concedes that he "oversee[s] [the employees] in their day-to-day activities for the corporation." Of course, employees of Valenti's company are third parties who fall within the ambit of the stipulation's "no contact" provision. For Jayarvee to perform the contracts—or, for that matter, for plaintiff to perform—the company's employees would need to serve as conduits for communications to plaintiff that originated with Valenti. That result would clearly violate the stipulation's prohibition of third-party contact.

It is true that Jayarvee is not a party to the stipulation, and Valenti is not a party to the contracts. Practically speaking, however, Jayarvee's employees answer to Valenti, and the company's decisions are ultimately made by Valenti. It would be impossible for Jayarvee, without Valenti's input, to engage in communication with plaintiff. It is of no moment that Jayarvee *could* hypothetically perform the contracts absent Valenti's involvement; to do so would require a sort of firewall, the very establishment of which would necessitate (direct or indirect) communication between Valenti and plaintiff. Valenti's own admissions as to his role managing Jayarvee compel the conclusion that the contracts could not be performed without his involvement and, thus, without violating the stipulation.

Moreover, there was an attempt in Family Court to exempt Jayarvee's employees from the "no contact" provision. As originally drafted, the stipulation included language that would have permitted communication by "other individuals at Jayarvee or [Valenti's] place of business" in addition to communication by counsel. However, the court struck that language, and plaintiff and Valenti agreed to the stipulation without it. Valenti evidently understood that the stipulation precluded contact between plaintiff and employees of Jayarvee and that, without an exception permitting such contact, the contracts could not be performed.

Indeed, defendants have previously acknowledged that the doctrine of impossibility applies to the contracts here. Valenti admitted in his sworn affidavit that the temporary order of protection—an order that was essentially identical to the stipulation in its preclusion of third-party contact—made performance by Jayarvee impossible. Jayarvee and Valenti admitted the

same in their verified answer. Defendants are correct that judicial estoppel is inapplicable here, since Valenti did not secure a judgment in his favor based on his prior statements (*see All Terrain Props. v Hoy*, 265 AD2d 87, 93 [1st Dept 2000]). However, while Valenti is free to argue that performance is possible, he cannot create an issue of fact by contradicting his prior sworn statement (*see Garber v Stevens*, 94 AD3d 426, 427 [1st Dept 2012]).

Furthermore, contrary to defendants' contention, plaintiff's role in bringing about the stipulation does not render the impossibility doctrine inapplicable. That plaintiff unilaterally obtained the temporary order of protection is irrelevant, because Valenti consented to the stipulation, which essentially operates in its place. Plaintiff did not unilaterally control the means by which the impossibility was created (*see Cushman & Wakefield v Dollar Land Corp. [US]*, 36 NY2d 490, 496 [1975] [dissenting shareholders who obtained injunction precluding sale of corporation, and later gained control over corporation, could not rely on injunction to declare sale of corporation impossible because they had power to dissolve injunction]). Further, this Court is unaware of any case that has considered a situation where, as here, the party who initially sought the order that caused the impossibility was compelled to do so by the alleged domestic abuse of her partner.

Nor, as defendants contend, was it foreseeable at the time of contracting that plaintiff and Valenti would enter into an agreement to bar contact between each other (*cf. Kel Kim*, 70 NY2d at 902). Valenti argues that the breakdown of his relationship with plaintiff constituted the grounds of impossibility on which plaintiff relies, and that the breakdown was foreseeable. Rather, the *stipulation* is what makes performance of the contracts impossible. Absent the stipulation (and the temporary order of protection that preceded it), Jayarvee and plaintiff could have lawfully performed the contracts despite plaintiff and Valenti's strained relationship, but when the Family Court so-ordered the stipulation to which Valenti and plaintiff assented, performance of the contracts between Jayarvee and plaintiff became legally and objectively impossible. Even if plaintiff could have foreseen that her relationship with Valenti would continue to deteriorate, it was not foreseeable that she and Valenti would enter into the stipulation.

Consequently, the stipulation is not something that the parties could have contracted around (*cf. Kel Kim*, 70 NY2d at

902). Nor, assuming arguendo that plaintiff's allegations are true, is domestic abuse something that, as a public policy matter, parties should be expected to contract around. In *Kel Kim*, the Court of Appeals held that performance of a lease agreement was not excused by impossibility where the lessee failed to obtain the contractually required amount of liability insurance, because Kel Kim's "inability to procure and maintain requisite coverage could have been foreseen and guarded against when it specifically undertook that obligation in the lease" (*id.*). Here, by contrast, in undertaking to perform recording and management contracts, the eventuality that the parties would subsequently stipulate to forbid contact with one another could not have been foreseen or guarded against.

Accordingly, the amended order of the Supreme Court, New York County (Ellen M. Coin, J.), entered April 16, 2013, which, inter alia, granted plaintiff's motion for partial summary judgment declaring the recording and management contracts between plaintiff and defendant Jayarvee terminated, and so declared, should be affirmed, with costs.

ANDRIAS, MOSKOWITZ, RICHTER and MANZANET-DANIELS, JJ., concur.

Amended order, Supreme Court, New York County, entered April 16, 2013, affirmed, with costs.