Pentagon Fed. Credit Union v Popovic (2023 NY Slip Op 03076)

Pentagon Fed. Credit Union v Popovic

2023 NY Slip Op 03076

Decided on June 08, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 08, 2023

Before: Webber, J.P., González, Rodriguez, Pitt-Burke, JJ. 

Index No. 653831/21 Appeal No. 430 Case No. 2022-02509 

[*1]Pentagon Federal Credit Union, as Successor by Merger to Progressive Credit Union, Plaintiff-Respondent,
v
Sophia Popovic et al., Defendants-Appellants.

Fox Rothschild LLP, New York (Brett A. Berman of counsel), for appellants.
Vedder Price P.C., New York (Daniel C. Green of counsel), for respondent.

Order, Supreme Court, New York County (Andrew Borrok, J.), entered April 8, 2022, which, to the extent appealed from, granted plaintiff's motion for summary judgment dismissing defendants' affirmative defenses and counterclaims, unanimously affirmed, without costs.
Plaintiff, a lender that finances the purchase of taxicab medallions, commenced this action by summons and complaint alleging that defendants defaulted on loans extended by plaintiff. Defendants Sophia and Jacqueline Popovic are the borrowers on the loans and the remaining defendants are the guarantors of those loans. Plaintiff alleges that the borrowers executed promissory notes that had been modified and extended and that other defendants had issued guaranties and pledge agreements securing the loans with the pledge of taxi medallions as NYC collateral. Defendants, borrowers and guarantors on loans from plaintiff, do not dispute that plaintiff established a prima facie case, and we find that defendants did not raise triable issues of fact as to the tenth, fourteenth, fifteenth, sixteenth and seventeenth affirmative defenses or their first counterclaim, all of which arise from the COVID-19 pandemic (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). The affirmative defenses, which assert that plaintiff's damages in this loan default action result from circumstances beyond defendants' control and are barred by the doctrines of impossibility and frustration of purpose; and the counterclaim, which asks the court to declare that defendants' obligations to plaintiff pursuant to the loans at issue are discharged, essentially contend that the sharp reduction in revenue that taxicabs suffered due to plummeting ridership during the COVID-19 pandemic excuses defendants' contractual obligations. However, defendants do not show that the financial hardship they suffered is tantamount to the "destruction of the subject matter" of the loan agreements or that their reasons for performing under the loan agreements ceased to exist, such that the doctrines of impossibility or frustration of purpose would apply (see e.g. Kel Kim Corp. v Central Mkts., 70 NY2d 900, 902 [1987]; 407 E. 61st Garage v Savoy Fifth Ave. Corp., 23 NY2d 275, 281 [1968]).
Indeed, defendants' invocation of the pandemic as grounds for application of the doctrines of frustration of purpose or impossibility is an approach this Court has squarely rejected — even, at times, where the business of the party seeking application of such doctrines was temporarily suspended (see e.g. Knickerbocker Retail LLC v Bruckner Forever Young Social Adult Day Care Inc., 204 AD3d 536 [1st Dept 2022]; Valentino U.S.A., Inc. v 693 Fifth Owner LLC, 203 AD3d 480 [1st Dept 2022]; Gap, Inc. v 170 Broadway Retail Owner, LLC, 195 AD3d 575 [1st Dept 2022]; City Natl. Bank v Baby Blue Distribs., Inc. 199 AD3d 559 [1st Dept 2021]; 558 Seventh Ave. Corp. v Times Sq. Photo Inc., 194 AD3d 561 [1st Dept 2021], appeal dismissed 37 NY3d 1040 [2021]).
In general [*2]terms, and without citations to specific economic data, defendants attempt to distinguish their situation from those at issue in commercial landlord-tenant cases, such as Gap, Inc. (195 AD3d at 575), on grounds that commercial retail tenants had the ability to mitigate the pandemic's adverse effects via curbside or online sales, whereas taxis had no such option. However, their effort to portray their situation as more dire than commercial retailers' is unavailing, not only because it is unsupported by data, but because the comparison is complicated by the fact that, as the motion court stated and defendants do not challenge, taxis, per Executive Order (A. Cuomo) No. 202.6 (9 NYCRR 8.202.6), were — in contrast to many retailers other than grocery stores and pharmacies — deemed "essential," and thus allowed to continue to operate without restriction throughout the pandemic (see e.g. Medallion Bank v Makridis, 2022 NY Slip Op 33983[U], *2-3 [Sup Ct, NY County 2022]). Defendants argue that, notwithstanding the Executive Order, they still lacked "a sufficient pool of riders," however, they point to no provisions in the loan documents that conditioned their obligations on a particular level of ridership.
We further find that defendants did not raise an issue of fact as to their seventh, eighth, ninth, and twelfth affirmative defenses or their second and third counterclaims, all of which arise from plaintiff's alleged predatory lending practices and departure from taxicab lending industry custom. Defendants rely on news articles concerning predatory lending practices in the taxicab industry. However, defendants fail to directly connect the matters in the articles to the loans at issue here.
The negligent misrepresentation counterclaim fails for lack of the requisite relationship between plaintiff and defendants (see Korea First Bank of N.Y. v Noah Enters., Ltd., 12 AD3d 321, 323 [1st Dept 2004], lv denied 4 NY3d 710 [2005]), and lack of the requisite specificity (CPLR 3016[b]). Defendants allege that they were led to believe that the loan maturity dates would be repeatedly extended; however, they offer no facts to show when, how, or by whom at plaintiff they were so led to believe, or what they were told regarding how long the maturity date could be extended. Moreover, the loan documents undercut any notion that defendants could have reasonably relied on any representations by plaintiff as to extending the maturity dates on the loans (see Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 180 [2011]), as they expressly state that any extension/modification or extension of credit shall not be binding upon the lender unless memorialized in a signed writing. Furthermore, certain loan documents expressly provide that the "loan is due and payable in full at the maturity of the balloon" at which time "the entire principal balance of the loan . . . and all unpaid interest are due," and that plaintiff's predecessor was "under no obligation to modify or refinance [*3]the loan at that time." These documents further expressly inform defendants that "[y]ou will . . . be required to make payment out of other assets that you may own, or you will have to find another lender willing to lend you the money." For the same reasons, we find that defendants raised no triable issues of fact to show that, by notifying defendants of their defaults under the loans and requiring full payment at maturity, that plaintiff breached the implied covenant of good faith and fair dealing (see e.g. Gottwald v Sebert, 193 AD3d 573, 581-582 [1st Dept 2021]).
Defendants' arguments as to the prematurity of the motion and need for additional discovery are unavailing. Plaintiff claims that after it produced thousands of documents in response to defendants' initial discovery demands, defendants sought no additional discovery. Defendants neither challenge this claim nor substantiate their suggestion that plaintiff's production was incomplete.
We have considered defendants' remaining arguments and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 8, 2023