KEL KIM CORPORATION et al., Appellants, v CENTRAL MARKETS, INC., et al., Respondents.—Yesawich, Jr., J. Appeal from an order of the Supreme Court (Doran, J.), entered October 16, 1986 in Saratoga County, which, *inter alia,* granted defendants' motion for summary judgment and declared that a lease between the parties was nullified.

In 1980, the corporate parties entered into a written agreement to lease a building and land in Saratoga County for an initial period of 10 years, with two five-year renewal options. It was understood that the leased premises, formerly occupied

as a supermarket, would be used to operate a roller skating rink open to the general public. The individual plaintiffs are guarantors of the lease.

Paragraph 11.2 of the lease required plaintiff Kel Kim Corporation (Kel Kim) to procure and maintain in full force and effect, with solvent and responsible companies, public liability insurance coverage on the building, the parking area, sidewalks and approaches to the demised premises of not less than $500,000 for any individual and in the aggregate of not less than $1,000,000 on account of any single accident. Article 23 of the lease contained a *force majeure* clause which, insofar as is pertinent reads: "If either party to this Lease shall be delayed or prevented from the performance of any obligation through no fault of their own by reason of labor disputes, inability to procure materials, failure of utility service, restrictive governmental laws or regulations, riots, insurrection, war, adverse weather, Acts of God, or other similar causes beyond the control of such party, the performance of such obligation shall be excused for the period of the delay."

Kel Kim was in full compliance with all the terms of the lease until January 6, 1986, the effective date that its liability insurance policy was canceled because of uncertainty as to the financial condition of its insurer, which was then under a court-appointed administrator. Kel Kim had sought, but was unable to obtain aggregate coverage in the amount of $1,000,000 and, instead, secured only $500,000. Hence, on January 7, 1986, defendant Golub Properties, Inc. served a notice of default upon Kel Kim which provided that the premises were to be vacated if the default was not cured within 30 days.

This action for a declaration of the rights and obligations of the parties under the lease was then commenced by Kel Kim and the guarantors. Thereafter, defendants moved for summary judgment in their favor and plaintiffs cross-moved for similar relief. Plaintiffs sought to be relieved of compliance with paragraph 11.2 until such time as the requisite liability insurance was reasonably obtainable, and otherwise to have the terms of the lease continued. Defendants sought to have Kel Kim enjoined from operating a roller skating rink on the premises until Kel Kim obtained insurance coverage in full compliance with paragraph 11.2 or until it vacated the premises. Supreme Court granted defendants' motion, dismissed the complaint and directed plaintiffs to vacate the premises. The court concluded that the doctrine of impossibility of performance was inapplicable, as it was Kel Kim's contention that is inability to strictly comply with paragraph 11.2 was due to a

nationwide insurance industry crisis. The court further concluded that the *force majeure* clause did not excuse Kel Kim's failure to obtain the bargained-for coverage. This appeal by plaintiffs followed. We affirm.

Application of the impossibility of performance doctrine hinges upon a showing that performance of a condition is rendered impossible by an unanticipated event that could not be foreseen or guarded against in the contract *(Ogdensburg Urban Renewal Agency v Moroney,* 42 AD2d 639, 640). Furthermore, a "promisor may not claim impossibility of performance where any such impossibility 'is personal to the promisor and does not inhere in the nature of the act to be performed' " *(Beagle v Parillo,* 116 AD2d 856, 857, quoting 22 NY Jur 2d, Contracts, § 341, at 228). Here, the act promised was the procurement and maintenance of a liability policy affording the lessors protection in the aggregate amount of $1,000,000. As to the "unanticipated, unforeseeable risk" element of the doctrine, given the caprices over the years of the liability insurance industry, the austere reality is that inability to obtain liability insurance, for the duration of a lease having an outside limit of 20 years which is dependent upon the cooperation of third parties, was, we think, foreseeable and should have been guarded against in the contract. In any event, the risk that the coverage might not be obtained should not be borne by the landlord but by the lessee who agreed to obtain it.

Moreover, Kel Kim's nonobservance of the insurance aspect of the agreement was personal to it; there is no indication whatsoever in the record that Kel Kim was unable, or even attempted, to secure the necessary insurance had the premises been utilized for a commercial purpose other than that of a roller skating rink. In addition, since the lease places no limitation on plaintiffs' use of the demised premises, it would be patently unfair to allow it to unilaterally rewrite the terms of the lease so as to limit use of the premises to a roller rink. In short, even assuming that the condition of the liability insurance market was as plaintiffs represent, that did not prohibit them from using the building to conduct other businesses thereon for which the requisite insurance could have been secured; the decision not to do so was one they elected to make.

Nor are we persuaded by the argument that plaintiffs' performance should be excused by virtue of the *force majeure* clause. When in a *force majeure* clause, specific events are enumerated, followed by or coupled with more general lan-

guage of excuse, the precept of *ejusdem generis* as a construction guide is appropriate *(see, Krulewitch v National Importing & Trading Co.,* 195 App Div 544, 546). Under this principle, words constituting general language of excuse are not to be given the most expansive meaning possible, but are held to apply "only to * * * the same general kind or class as those specifically mentioned" (Black's Law Dictionary 464 [5th ed]).

Of the enumerated events in that clause, the only one remotely bearing on plaintiffs' circumstances, the "inability to procure materials", is conceptually akin to *Raner v Goldberg* (244 NY 438) about which it has been authoritatively observed that, "when a lessee enters into a lease for the purpose of engaging in a business which requires a license, his duty is not discharged if the license is denied" (Calamari and Perillo, Contracts § 13-13, at 500 [2d ed]). More importantly, the *force majeure* clause here contemplates irresistible forces which make consummation of any material obligation of the lease impossible. While compliance with the insurance aspect of the lease agreement is a material element of the lease, it is the lawful use and occupancy of the demised premises which is its centerpiece, and plaintiffs have not shown that they have been prevented from using the premises by reason of a frustrating circumstances not of their own making, for it is they who have chosen to use the premises for an enterprise for which they cannot obtain the necessary insurance; one simply cannot rely on his own act, or failure to act, as a *force majeure* (Annotation, 84 ALR2d 20, n 6, citing *Lebeaupin v Crispin & Co.,* 2 KB 714 [1920]).

While we are not unmindful of the hardship, expense and potential loss which may accrue to plaintiffs as a result of this decision, the fact remains that " '[w]hen a party by his own contract creates a duty or charge upon himself, he is bound to a possible performance of it, because he promised it, and did not shield himself by proper conditions or qualifications' " *(Krulewitch v National Importing & Trading Co., supra,* at 547, quoting *Cameron-Hawn Realty Co. v City of Albany,* 207 NY 377, 382), and courts are powerless to modify the agreement or dispense with the performance of its terms.

Order affirmed, without costs. Main, J. P., Yesawich, Jr., and Harvey, JJ., concur.

Weiss and Mikoll, JJ., dissent and vote to reverse in a memorandum. Mikoll, J. (dissenting). We disagree. In our view Supreme Court erred in granting summary judgment in favor of defendants. The *force majeure* clause should be applied to

excuse Kel Kim's noncompliance with paragraph 11.2 of the lease agreement. Summary judgment should be granted in favor of plaintiffs and a declaration made that plaintiffs are excused from performance of that portion of paragraph 11.2 of the lease agreement requiring $1,000,000 of aggregate coverage only to the extent that and for so long as such full coverage cannot be obtained.

The *force majeure* clause in the case at bar uses broad language. It encompasses many types of events, including acts of God, riots and other discord, legal restraints and economic disturbances. Kel Kim's inability to procure the required insurance from any available insurer due to the present "crises" is in the nature of an economic disturbance. Moreover, it is akin to a crisis produced in an industry by virtue of a labor dispute as is the enumerated event "inability to procure materials". Force must be given to the general language of the *force majeure* clause which reads "or other similar causes beyond the control of such party". Furthermore, any ambiguity in the wording of the *force majeure* clause must be resolved against the drafter of the contract provision, defendants here *(see, 67 Wall St. Co. v Franklin Natl. Bank,* 37 NY2d 245, 249). This result is consonant with the equities of this situation where not only was it contemplated that the use of the premises was to be as a roller skating rink, but there also is evidence that Kel Kim has over the course of the lease invested $150,000 in leasehold improvements.