■ TEAM MARKETING USA CORPORATION, Appellant, v POWER PACT, LLC, Respondent. [839 NYS2d 242]—

Mercure, J.P. Appeal from an order of the Supreme Court (Kavanagh, J.), entered October 4, 2006 in Ulster County, which, inter alia, granted defendant's motion to dismiss the complaint.

In March 2005, the parties entered into a contract in which plaintiff agreed to staff various Toyota promotional marketing events. The proposed schedule of events, which was incorporated into the contract by reference, called for 17 to 22 events from April through December 2005. After the first event, defendant advised plaintiff that Toyota had changed the proposed schedule and that the future of the entire program was in question. Defendant asserts that plaintiff thereafter agreed to staff promotions on an "event-by-event basis"; plaintiff asserts that defendant cancelled the contract and that plaintiff separately agreed to staff only events that were not part of the original schedule. In June 2005, plaintiff informed defendant that due to defendant's "inefficient practices," plaintiff had "decided not to staff the Toyota program going forward." Plaintiff sent defendant an invoice for $7,826.55, representing a cancellation fee pursuant to the original contract. Defendant denied any obligation to pay this cancellation charge, claiming that plaintiff itself had cancelled the contract.

Plaintiff then commenced this action against defendant for breach of contract, unjust enrichment, account stated and reasonable counsel fees under the terms of the contract. Supreme Court granted defendant's motion to dismiss the complaint,[1] finding that plaintiff failed to state a cause of action and had waived its entitlement to the cancellation fee because it failed to send an invoice to defendant within 30 days of the claimed cancellation date, as required by the contract. Plaintiff appeals and we now reverse that part of Supreme Court's order that dismissed plaintiff's breach of contract and reasonable counsel fees claims.

In resolving a CPLR 3211 (a) (7) motion to dismiss for failure to state a cause of action, "the court must afford the pleadings a liberal construction, take the allegations of the complaint as true and provide plaintiff the benefit of every possible inference" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]; *see AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582, 591 [2005]). Moreover, "a court may freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint" (*Leon v Martinez*, 84 NY2d 83, 88 [1994]). Here, the contract, which was annexed to the complaint, expressly provides that a cancellation charge of "10% of [t]otal staffing fee is payable for coordination, talent fees and accounting if cancellation [occurs] after execution of agreement."

---

**1.** Although issue was not joined, defendant moved in the alternative for summary judgment dismissing the complaint pursuant to CPLR 3212 and plaintiff cross-moved for summary judgment.

Cancellations are stated to include, among other things, "[p]ostponements, reschedules, weather issues and refusal of event site or [defendant] to allow talent to execute event." It is undisputed that on May 13, 2005—after only a single promotional even—the remaining events were either rescheduled or cancelled. In our view, given the express language of the contract, plaintiff has sufficiently pleaded a cause of action for breach of contract (*see Leon v Martinez, supra* at 88-89; *cf. EBC I, Inc. v Goldman, Sachs & Co., supra* at 22).

We further agree with plaintiff that Supreme Court erred in dismissing the complaint on the ground that plaintiff waived its right to the cancellation fee. The court—evidently treating defendant's motion as one for summary judgment (*see* CPLR 3211 [c])—determined that defendant established as a matter of law that plaintiff waived its claim to the cancellation fee by its conduct in failing to claim the fee within 30 days of the alleged termination of the contract and by staffing other promotional events for defendant without mentioning or seeking the fee. The relevant provisions of the contract state that "[p]romotions will be invoiced monthly and payment [is] due within 30 days of receipt of invoice" and that "invoices must be received by [defendant] no later than thirty (30) days after performance of the Services, in order to be considered for prompt payment." Giving "fair and reasonable meaning to the language used" with "reference to other provisions of the contract" (*Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d 1, 9-10 [1997]), neither provision is applicable here.

Plaintiff attempted, prior to the scheduled date of a number of the promotions, to collect a cancellation fee pursuant to a liquidated damages provision. It did not, as defendant asserts, invoice a "promotion" or seek payment for "Services" which are defined in the contract's "Standard of Services" provision as including plaintiff's employees "interact[ing] with the general public, hand[ing] out samples, do[ing] demonstrations and conduct[ing] requested tests or events." In addition, the contract, on its face, provides that the 30-day deadline is a condition for the issuance of *prompt* payment by defendant, rather than a condition on defendant's obligation to pay for "Services." Moreover, assuming without deciding that the payment provision is ambiguous, plaintiff submitted evidence that the parties acted in accord with that understanding.

In any event, waiver—which is the voluntary and intentional abandonment of a contract right—" 'should not be lightly presumed' and must be based on 'a clear manifestation of intent' to relinquish a contractual protection" (*Fundamental Portfolio*

*Advisors, Inc. v Tocqueville Asset Mgt., L.P.,* 7 NY3d 96, 104 [2006], quoting *Gilbert Frank Corp. v Federal Ins. Co.,* 70 NY2d 966, 968 [1988]). Thus, "[g]enerally, the existence of an intent to forgo such a right is a question of fact" (*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., supra* at 104; *see AXA Global Risks U.S. Ins. Co. v Sweet Assoc.,* 302 AD2d 844, 846 [2003]). Here, while plaintiff provided staffing for additional events and did not immediately seek to enforce the contract's cancellation provision when defendant informed it that Toyota had either postponed or cancelled future promotions, the parties dispute whether defendant proposed the additional events as a separate and distinct program or part of the original contract. In addition, the parties dispute whether plaintiff indicated to defendant that the cancellation fee was waived. Under these circumstances, questions of fact exist regarding whether plaintiff waived its right to collect such a fee, and an award of summary judgment is premature (*see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., supra* at 104-106; *AXA Global Risks U.S. Ins. Co. v Sweet Assoc., supra* at 846).

Finally, we reject defendant's argument, advanced as an alternative ground for affirmance (*see Matter of Eck v County of Delaware,* 36 AD3d 1180, 1181 n [2007]; *Matter of Mack v Board of Appeals, Town of Homer,* 25 AD3d 977, 979 [2006]), that plaintiff is precluded from recovery pursuant to the force majeure clause of the contract. That clause specifies: "Force Majeure: Notwithstanding anything to the contrary contained herein, [defendant] shall not be liable to [plaintiff] if Promotion is not able to take place or [plaintiff] is rendered unable to timely perform any of its obligations hereunder *for any reason,* including, without limitation, strikes, boycotts, war, Acts of God, labor troubles, riots, and restraints of public authority" (emphasis added). Force majeure clauses are to be interpreted in accord with their function, which is to relieve a party of liability when the parties' expectations are frustrated due to an event that is "an extreme and unforeseeable occurrence," that "was beyond [the party's] control and without its fault or negligence" (30 Lord, Williston on Contracts § 77:31 [4th ed]; *see* 8-31 Corbin on Contracts § 31.4 [2006]; *United Equities Co. v First Natl. City Bank,* 41 NY2d 1032 [1977], *affg on op below* 52 AD2d 154, 157 [1976]; *Macalloy Corp. v Metallurg, Inc.,* 284 AD2d 227, 227 [2001]). When the event that prevents performance is not enumerated, but the clause contains an expansive catchall phrase in addition to specific events, "the precept of *ejusdem generis* as a construction guide is appropriate"—that is, "words constituting general language of excuse are not to be

given the most expansive meaning possible, but are held to apply only to the same general kind or class as those specifically mentioned" (*Kel Kim Corp. v Central Mkts.*, 131 AD2d 947, 950 [1987], *affd* 70 NY2d 900 [1987] [citation and internal quotation marks omitted]).

None of the specifically enumerated events in the clause at issue—strikes, boycotts, war, Acts of God, labor troubles, riots, and restraints on public authority—are similar in nature to Toyota's actions in rescheduling or cancelling the promotion schedule. Rather, the enumerated, unforeseeable events in the force majeure clause "pertain to a party's ability to conduct day-to-day commercial operations," while the cancellation clause provided plaintiff with "bargained-for protection of [its] . . . economic interests" if the promotional events were rescheduled or cancelled (*Kel Kim Corp. v Central Mkts.*, 70 NY2d 900, 903 [1987])—a possibility that was contemplated by the parties as evidenced by the questionable dates designated for several of the events within the program. In that regard, we note "the principle that a contract which confers certain rights or benefits in one clause [i.e., the cancellation clause] will not be construed in other provisions completely to undermine those rights or benefits" (*Ronnen v Ajax Elec. Motor Corp.*, 88 NY2d 582, 590 [1996]). Inasmuch as the reasonable expectations of the parties were not frustrated due to unforeseeable circumstances beyond their control and of the type enumerated in the contract, defendant cannot rely on the force majeure clause here (*see Kel Kim Corp. v Central Mkts.*, 70 NY2d 900, 903 [1987], *supra*; *Macalloy Corp. v Metallurg, Inc.*, *supra* at 227-228).

Plaintiff's remaining arguments are either not properly before us or have been considered and found to be lacking in merit, with the exception of its argument regarding counsel fees.[2] Defendant concedes that the contract provides for counsel fees in the event of a breach and, thus, reversal of the dismissal of the breach of contract claim requires reversal on the claim for counsel fees, as well.

Spain, Carpinello, Mugglin and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendant's motion to dismiss the first and fourth causes of action; motion denied to that extent; and, as so modified, affirmed.

---

2. Plaintiff has not argued on appeal that Supreme Court erred in dismissing its account stated and unjust enrichment claims and, thus, we deem any issue related to those claims to be abandoned (*see Pizarro v State of New York*, 19 AD3d 891, 892 [2005], *lv denied* 5 NY3d 717 [2005]; *Fellion v Darling*, 14 AD3d 904, 906 n [2005]).