■ Mme. Pirie's, Inc., et al., Respondents, v Keto Ventures, LLC, Appellants. [57 NYS3d 555]—

McCarthy, J.P. Appeal from a judgment of the Supreme Court (Platkin, J.), entered February 18, 2016 in Albany County, which, among other things, granted plaintiffs' motion for summary judgment.

Plaintiff Mme. Pirie's, Inc. (hereinafter the corporation) was the owner of Madam Pirie's Famise Corset and Lingerie Shop (hereinafter the shop), and plaintiff Rosa Belleville is the president and sole shareholder of the corporation. In March 2013, Jessica Keto (hereinafter decedent), a college graduate with a business degree, began working as a part-time employee at the shop, which was run by Belleville. During this time, Belleville generally discussed approaching the age of 70 and her hopes of retiring, and, at some point, decedent approached her about purchasing the shop. In January 2014, the corporation entered into an agreement to sell the shop to defendant Keto Ventures, LLC, a limited liability company of which decedent was the sole member. Pursuant to a purchase agreement, Keto Ventures purchased the business, including inventory and certain personal property, from the corporation for $512,500. Approximately half the purchase price was paid at the time of closing, and the remaining balance took the form of a promissory note pursuant to which Keto Ventures and decedent agreed to make 36 monthly payments and one final lump payment to Belleville, the note's payee. The same parties also entered into a security agreement to secure repayment of the note whereby Belleville retained a security interest in the shop, its inventory and other personal property. Following the closing, decedent took possession of the shop. However, in March 2014, decedent unexpectedly passed away. Defendant Valerie Keto, decedent's mother, was appointed as administrator of decedent's estate and defendant Jacklyn Keto, decedent's sister, took over operation of the shop.

After Keto Ventures failed to make several installment payments, Belleville notified defendants that they were in default and demanded both the immediate repayment of the note in full and that defendants turn over the shop and its inventory pursuant to the security agreement. In July 2014, after defendants failed to comply with Belleville's demands, plaintiffs commenced this action alleging defendants' breach of the promis-

sory note and the purchase agreement and seeking replevin pursuant to the security agreement. Defendants answered raising affirmative defenses sounding in fraud, unclean hands, estoppel, impossibility of performance and unconscionability, as well as counterclaims based upon fraud and constructive fraud, breach of a noncompetition clause and breach of the purchase agreement. Thereafter, Supreme Court granted plaintiffs' motion for an order of seizure and a temporary restraining order enjoining defendants from selling or depleting the shop except in the ordinary course of business.

Prior to the completion of discovery, plaintiffs moved and defendants cross-moved for summary judgment and Supreme Court denied the parties' motions as premature. After discovery, plaintiffs again moved for summary judgment on all causes of action and to strike defendants' affirmative defenses and counterclaims. Defendants opposed plaintiffs' motion and cross-moved for partial summary judgment. The court granted plaintiffs' motion for summary judgment, dismissed defendants' affirmative defenses and counterclaims and denied defendants' cross motion. Thereafter, the court entered a judgment, upon a prior decision and order of the court, declaring the amounts owed by defendants to plaintiffs. Defendants now appeal.

Supreme Court properly granted plaintiffs' motion for summary judgment dismissing defendants' affirmative defense and counterclaim for fraud. "The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance . . . and damages" (*Town of Tupper Lake v Sootbusters, LLC*, 147 AD3d 1268, 1270 [2017]; *see Bynum v Keber*, 135 AD3d 1066, 1067-1068 [2016]). "The elements of a cause of action to recover for constructive fraud are the same as those to recover for actual fraud with the crucial exception that the element of scienter . . . is dropped and is replaced by a requirement . . . [to] prove the existence of a fiduciary or confidential relationship warranting the trusting party to repose his or her confidence in [a] defendant and therefore to relax the care and vigilance he or she would ordinarily exercise in the circumstances" (*Levin v Kitsis*, 82 AD3d 1051, 1054 [2011] [internal quotation marks, brackets, ellipsis and citations omitted]; *see Sears v First Pioneer Farm Credit, ACA*, 46 AD3d 1282, 1286 [2007]). In the context of constructive fraud, a confidential or fiduciary relationship will be found "when the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equal-

ity but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable" (*Matter of Aoki v Aoki*, 27 NY3d 32, 39 [2016] [internal quotation marks, citation and emphasis omitted]). An employment relationship, on its own, will not create a fiduciary relationship (*see Lyndaker v Board of Educ. of W. Can. Val. Cent. Sch. Dist.*, 129 AD3d 1561, 1562 [2015]; *Rather v CBS Corp.*, 68 AD3d 49, 55 [2009], *lv denied* 13 NY3d 715 [2010]; *AHA Sales, Inc. v Creative Bath Prods., Inc.*, 58 AD3d 6, 21 [2008]; *Maas v Cornell Univ.*, 245 AD2d 728, 731 [1997]).

Plaintiffs established as a matter of law that they did not commit constructive fraud. The proof regarding Belleville and decedent's relationship establishes that, as well as maintaining an employer-employee relationship, the two occasionally had drinks and lunch together and, on one occasion, visited a casino. Otherwise, not only was Belleville not decedent's "accountant, lawyer or financial advisor" (*Matter of Stalter*, 270 AD2d 594, 597 [2000], *lv denied* 95 NY2d 760 [2000]), but plaintiffs' attorney in the transaction explicitly advised decedent to obtain her own attorney, engage in due diligence and consider hiring an accountant. Moreover, decedent did hire an attorney to represent Keto Ventures in the transaction. Even when viewed in the light most favorable to defendants, the evidence establishes that the relationship between Belleville and decedent was not "grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]; *see Rather v CBS Corp.*, 68 AD3d at 55; *Matter of Stalter*, 270 AD2d at 597).

Next, defendants contend that decedent relied on Belleville's intentional misrepresentation of the finances of the shop, caused by Belleville's use of the word "annually" in an owner benefits statement that summarized benefits from the shop for the previous year. Regardless of the objective meaning of the term "annually," Belleville unambiguously testified that she understood the term "annually" as used in the owner's benefits statement to refer to the previous year.* The conclusion that Belleville was not trying to misrepresent the shop's finances is further supported by the evidence that Belleville's attorney ad-

---

* To the extent that Belleville stated at her deposition that a better term would have been "annual," her sworn statements and testimony further clarified that she used the term "annual" when she orally discussed the owner's benefits with decedent.

vised decedent in regard to hiring an accountant, an act patently inconsistent with an attempt to commit fraud through financial misrepresentation. As defendants failed to provide any nonspeculative direct or circumstantial evidence tending to contradict the aforementioned evidence that Belleville did not knowingly misrepresent the shop's finances, plaintiffs proved as a matter of law that any misrepresentation was not knowing and that Belleville did not intend to induce decedent's reliance on any misrepresentation (see Landes v Sullivan, 235 AD2d 657, 659 [1997]). Defendants' related contention that plaintiffs provided materially false financial projections for 2014 to 2016 is also without merit. Such projections fall squarely within the general rule that "predictions, even if proven false, are opinion[s] rather than misrepresentations of fact necessary to sustain a cause of action for fraud" (Abselet v Satra Realty, LLC, 85 AD3d 1406, 1409 [2011]).

Nonetheless, we agree with defendants that material issues of fact render summary judgment inappropriate as to their counterclaim regarding plaintiffs' alleged breach of the purchase agreement due to depletion of the shop's inventory up to the date of the sale. The purchase agreement provides that the corporation "shall operate the store in the normal course of business and keep the equipment and other assets made the subject of this sale in good repair until the time of closing" and "agrees to keep inventory stocked in the normal course of business up to the date of the sale." Plaintiffs met their initial burden through the sworn statement of Belleville, who explained that she continued to order the normal amount of inventory. However, defendants submitted the affirmation of an employee of the shop who had worked for Belleville for approximately three years. According to that employee, who had observed the shop's seasonal inventory levels, "[i]nventory was being depleted before the sale" even though more inventory was "desperately needed." As this employee's affirmation raises material issues of fact as to whether plaintiffs depleted the shop's inventory, plaintiffs were not entitled to summary judgment dismissing the breach of the purchase agreement counterclaim (see Team Mktg. USA Corp. v Power Pact, LLC, 41 AD3d 939, 942 [2007]; Widewaters Prop. Dev. Co., Inc. v Katz, 38 AD3d 1220, 1221-1222 [2007]; Frank v Sobel, 38 AD3d 229, 230 [2007]). Defendants' remaining contentions have been considered and are found to be without merit.

Egan Jr., Rose, Devine and Clark, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as granted plaintiffs' motion for summary

judgment dismissing defendants' counterclaim for breach of the purchase agreement premised on inventory depletion; motion denied to that extent; and, as so modified, affirmed. 