Jackie's Enters., Inc. v Belleville (2018 NY Slip Op 07225)





Jackie's Enters., Inc. v Belleville


2018 NY Slip Op 07225


Decided on October 25, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 25, 2018

526237

[*1]JACKIE'S ENTERPRISES, INC., Appellant,
v
ROSA BELLEVILLE et al., Respondents.

Calendar Date: September 5, 2018

Before: McCarthy, J.P., Lynch, Clark, Mulvey and Rumsey, JJ.


Corbally, Gartland & Rappleyea, LLP, Poughkeepsie (Kyle C. Van De Water of counsel), for appellant.
Nolan & Heller, LLP, Albany (Brendan J. Carosi of counsel), for respondents.



MEMORANDUM AND ORDER
McCarthy, J.P.
Appeal from an order of the Supreme Court (Platkin, J.), entered April 14, 2017 in Albany County, which, among other things, granted defendants' motion for summary judgment dismissing the complaint.
Defendant Rosa Belleville (hereinafter Belleville) is the president and sole shareholder of Mme. Pirie's, Inc., a corporation that previously owned and operated Madame Pirie's Famise Corset and Lingerie Shop (hereinafter the shop), a women's undergarment store located in the City of Albany. Defendant William Belleville is her husband and co-owner of the building in which the shop is located. Defendant Michael Belleville is their son. In January 2014, Mme. Pirie's and Belleville entered into a purchase and sale agreement with Keto Ventures, LLC, a corporation formed by Jessica Keto for such purpose, whereby Keto Ventures purchased the shop, including certain equipment and inventory. Keto Ventures and Jessica Keto, individually, executed a promissory note in favor of Belleville, a commercial lease agreement with Belleville and William Belleville to continue operating in the same space, and a security agreement granting Belleville a security interest in "all inventory, goods, equipment, appliances, furnishings, and fixtures [then] or [thereafter] placed upon the [the shop's] premises or used in connection therewith" and any "trademarks, trade names, contract rights, and leasehold interests" therein (hereinafter the collateral).
Following Jessica Keto's death in March 2014, her sister, Jacklyn Keto (hereinafter Keto), took over management of the shop. Soon thereafter, Keto Ventures failed to make several payments under the promissory note. When Keto Ventures did not meet Belleville's demands that the note be immediately repaid in full and that the shop and its inventory be turned over to her pursuant to the security agreement, Belleville and Mme. Pirie's commenced an action alleging causes of action for breach of contract and replevin against Keto Ventures, Keto and the administrator of Jessica Keto's estate. As part of that litigation, in July 2014, Supreme Court granted Mme. Pirie's and Belleville a temporary restraining order enjoining Keto Ventures, Keto [*2]and the administrator from "removing, transferring, dismantling, selling, pledging, or otherwise depleting or disposing of any of the [c]ollateral, or any products or proceeds thereof." Due to the July 2014 order, the shop was closed. In October 2014, the court issued an order continuing the temporary restraining order and permitting seizure of the collateral. Thereafter, in February 2016, the court granted a motion by Mme. Pirie's and Belleville for summary judgment on all causes of action. This Court later affirmed that order (Mme. Pirie's, Inc. v Keto Ventures, LLC, 151 AD3d 1363, 1366 [2017]).
Meanwhile, in July 2014, Keto formed plaintiff, a corporation to operate a new women's undergarment store; that store opened for business in November 2014 on the same road and less than a quarter of a mile from the shop. According to plaintiff, between October 15, 2014 and the opening of Keto's new store, defendants harassed Keto, interfered with her supply orders, suppliers and customers and made false statements concerning the existence of plaintiff's business. As a result, plaintiff commenced this action asserting causes of action sounding in defamation, tortious interference with business relations, and trespass to chattels and/or conversion. After issue was joined and the court-ordered date for completion of paper discovery expired, defendants moved for summary judgment dismissing the complaint. Supreme Court granted defendants' motion. Plaintiff appeals.
Supreme Court did not decide defendants' motion for summary judgment prematurely. Although a court may deny such a motion or hold it in abeyance to permit the parties to engage in discovery if the opponent of the motion establishes "that facts essential to justify opposition may exist but that such material facts are within the exclusive knowledge and possession of the moving party" (Gersten-Hillman Agency, Inc. v Heyman, 68 AD3d 1284, 1288 [2009] [internal quotation marks, brackets and citations omitted]; see CPLR 3212 [f]; Citibank, NA v Abrams, 144 AD3d 1212, 1213-1214 [2016]), "[s]ummary judgment may not be defeated on the ground that more discovery is needed, where, as here, the side advancing such an argument has failed to ascertain the facts due to its own inaction" (Meath v Mishrick, 68 NY2d 992, 994 [1986]; see Seton Health at Schuyler Ridge Residential Health Care v Dziuba, 127 AD3d 1297, 1300 [2015]; Ullmannglass v Oneida, Ltd., 121 AD3d 1371, 1373 [2014]; Sloane v Repsher, 263 AD2d 906, 907 [1999]). Here, in a scheduling order that prohibited the extension of any deadline without prior court approval, the court set a firm date for completion of paper discovery. Despite having 19 months between joinder of issue and the court's deadline, and six months after issuance of the court's scheduling order, plaintiff did not timely serve such discovery demands. Nor has plaintiff offered any explanation for failing to complete discovery within the ordered time frame or request an extension from the court (see Dalaba v City of Schenectady, 61 AD3d 1151, 1153 [2009]; Steinborn v Himmel, 9 AD3d 531, 535 [2004]). Further, plaintiff has failed to demonstrate that much of the requested discovery is in defendants' exclusive possession, as documents that defendants allegedly exchanged with suppliers and delivery companies would presumably be in the possession of those entities as well (see Gersten-Hillman Agency, Inc. v Heyman, 68 AD3d at 1288; Dalaba v City of Schenectady, 61 AD3d at 1153). Considering all of the circumstances, including the ample time originally provided for paper discovery, the court providently exercised its discretion pursuant to CPLR 3212 (f) in declining to postpone decision on defendants' motion (see Meath v Mishrick, 68 NY2d at 994; Seton Health at Schuyler Ridge Residential Health Care v Dziuba, 127 AD3d at 1300; Ullmannglass v Oneida, Ltd., 121 AD3d at 1373).
Supreme Court properly dismissed plaintiff's defamation cause of action. "The elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se" (Loch Sheldrake Beach & Tennis Inc. v Akulich, 141 AD3d 809, 815 [2016] [internal quotation marks and citations omitted], lv dismissed 28 NY3d 1104 [2016]; see Roche v Claverack Coop. Ins. Co., 59 AD3d 914, 916 [2009]). Pursuant to the strict pleading requirements for defamation actions, "the particular words complained of shall be set forth in the complaint" (CPLR 3016 [a]; see Demas v Levitsky, 291 AD2d 653, 659 [2002], lv dismissed 98 NY2d 728 [2002]; Skelly v Visiting Nurse Assn. of Capital Region, 210 AD2d 683, 686 [1994]), which must also contain "the time, place, [*3]and manner of the allegedly false statements and specify to whom such statements were made" (Wegner v Town of Cheektowaga, 159 AD3d 1348, 1349 [2018] [internal quotation marks and citation omitted]; see Arvanitakis v Lester, 145 AD3d 650, 651 [2016]; Dobies v Brefka, 273 AD2d 776, 777 [2000], lv dismissed 95 NY2d 931 [2000]).
In the complaint, plaintiff alleges, in pertinent part, that, "upon information and belief, the [d]efendants told the potential customers not to do business with the [p]laintiff because the [p]laintiff was not a legitimate business and that the [d]efendants owned all of the [p]laintiff's supplies." Somewhat more specifically, plaintiff further alleges that, between "October 1, 2014 to December 1, 2014, the [d]efendants called, emailed and otherwise communicated with the [p]laintiff's suppliers, customers, mail carriers, and [credit card processing service] provider" and that those "communications with the suppliers and customers erroneously, maliciously and recklessly contained falsehoods concerning the [p]laintiff, to wit: 'the [p]laintiff is not in business,' 'the [p]laintiff is an illegitimate business,' and/or 'the [p]laintiff business does not exist,' or words to that effect."
These allegations lack the specificity required by CPLR 3016 (a). Plaintiff improperly qualified the allegedly defamatory statements with the phrase "or words to that effect," indicating that the quotations are not, in fact, the exact or "particular words complained of" (CPLR 3016 [a]; see Romanello v Intesa Sanpaolo S.p.A., 97 AD3d 449, 455 [2012], mod on other grounds 22 NY3d 881 [2013]; Gardner v Alexander Rent-A-Car, Inc., 28 AD2d 667, 667 [1967]). "Merely paraphrasing the statements, notwithstanding the use of quotation marks to suggest a quotation where none in fact exists, warrants dismissal of [a] defamation action" (Scalise v Herkimer, Fulton, Hamilton & Otsego County BOCES, 16 AD3d 1059, 1060 [2005] [internal quotation marks, brackets and citation omitted]; see Massa Constr., Inc. v George M. Bunk, P.E., P.C., 68 AD3d 1725, 1725 [2009]; Conley v Gravitt, 133 AD2d 966, 968 [1987]). Further, the complaint does not sufficiently identify the specific third persons to whom the statements were allegedly made or identify which of the three defendants made any of the alleged statements (see Trakis v Manhattanville Coll., 51 AD3d 778, 781 [2008]; Rosenberg v Home Box Off., Inc., 33 AD3d 550, 550 [2006], lv denied 8 NY3d 804 [2007]; Bell v Alden Owners, 299 AD2d 207, 208 [2002], lv denied 100 NY2d 506 [2003]). Moreover, Keto's affidavit submitted in response to the motion was "insufficient to overcome the failure of the complaint to set forth the particular words alleged to be defamatory as required by CPLR 3016 (a)" (Avant Graphics v United Reprographics, 252 AD2d 462, 463 [1998]).
Supreme Court did not err in dismissing plaintiff's cause of action for tortious interference with business relations. To establish such a claim, " a party must prove (1) that it had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) that the defendant acted solely out of malice or used improper or illegal means that amounted to a crime or independent tort; and (4) that the defendant's interference caused injury to the relationship with the third party" (Amaranth LLC v J.P. Morgan Chase & Co., 71 AD3d 40, 47 [2009], lv dismissed and denied 14 NY3d 736 [2010]; see Carvel Corp. v Noonan, 3 NY3d 182, 189-190 [2004]; NBT Bancorp v Fleet/Norstar Fin. Group, 215 AD2d 990, 990-991 [1995], affd 87 NY2d 614 [1996]). "This tort is not satisfied by conduct that is . . . incidental to some other, lawful, purpose" (Schmidt & Schmidt, Inc. v Town of Charlton, 103 AD3d 1011, 1013 [2013] [internal quotation marks and citations omitted]).
In the complaint, plaintiff alleges that defendants wrongfully interfered with its business relationships with various suppliers, customers and service providers. Defendants each submitted an affidavit denying certain accusations and averring that they took actions to secure the shop's vendor accounts, to locate and obtain the shop's inventory and other merchandise ordered on said accounts and to attempt to gain access to certain online accounts belonging to the shop, all pursuant to Supreme Court's seizure order. The affidavits and supporting documents established a prima facie defense and shifted the burden to plaintiff to raise an issue of fact on any of the elements of the claim.
Plaintiff submitted Keto's affidavit, in which she asserts that defendants called all of plaintiff's vendors, canceled orders and told them that she was no longer in business. Keto also asserted that defendants confronted customers, told them not to do business with plaintiff and said that everything in the store belonged to Belleville. Plaintiff's general allegations that defendants interfered with "numerous suppliers, customers" and others were insufficient, as plaintiff was required to establish that it had a business relationship with a particular third party that was affected by defendants' conduct (see White v Ivy, 63 AD3d 1236, 1238 [2009]). Plaintiff asserts that one particular supplier, Wacoal, canceled orders due to defendants' interference; however, the record establishes that Wacoal acted in reliance on the seizure order, not merely on the assertions of any defendant. Although plaintiff argues that defendants improperly interfered with its Facebook and Yelp! accounts and web pages, the record demonstrates that those accounts were under the name of the shop, and the seizure order permitted Belleville to secure not only physical property of that business but its intangible property, such as trade names and contract rights. Even if Keto created those web pages, they belonged to the shop rather than plaintiff. Indeed, it appears that defendants' actions were intended, at least in part, to advance their competing business interests and economic self-interest and, thus, cannot be characterized as solely malicious (see Carvel Corp. v Noonan, 3 NY3d at 190; Emergency Enclosures, Inc. v National Fire Adj. Co., Inc., 68 AD3d 1658, 1661 [2009]; 71 Pierrepont Assoc. v 71 Pierrepont Corp., 243 AD2d 625, 626 [1997]). Plaintiff argues that defendants attempted to gain control of its credit card processing service account but, without any proof that those attempts were successful, plaintiff suffered no damage related to those actions. Hence, plaintiff failed to raise a question of fact regarding its cause of action for tortious interference with business relations.
Supreme Court properly dismissed plaintiff's cause of action for trespass to chattels or, alternatively, conversion. For a cause of action for trespass to chattels, plaintiff was required to establish that defendants "intentionally, and without justification or consent, physically interfered with the use and enjoyment of personal property in [plaintiff's] possession" (PJI 3:9; see Level 3 Communications, LLC v Petrillo Contr., Inc., 73 AD3d 865, 868 [2010]; Buckeye Pipeline Co. v Congel-Hazard, Inc., 41 AD2d 590, 590 [1973]; Hecht v Components Intl, Inc., 22 Misc 3d 360, 369-370 [Sup Ct, Nassau County 2008]). Liability for trespass to chattels will be imposed only if the interference results in harm to the physical condition, quality or value of the chattel or if the owner is deprived of use of the chattel for a substantial time (see Twin Sec., Inc. v Advocate & Lichtenstein, LLP, 113 AD3d 565, 565-566 [2014], lv dismissed 24 NY3d 950 [2014]; "J. Doe No. 1" v CBS Broadcasting Inc., 24 AD3d 215, 215 [2005]; see also Kronos, Inc. v AVX Corp., 81 NY2d 90, 95 [1993]; Restatement [Second] of Torts § 218). When a defendant intrudes or exercises control over property to the extent that a plaintiff is entirely denied of possession, the claim becomes one of conversion (see Colavito v New York Organ Donor Network, Inc., 8 NY3d 43, 49-50 [2006]; Sporn v MCA Records, 58 NY2d 482, 487 [1983]).
Generally, the factual allegations underlying plaintiff's trespass to chattels and/or conversion claim are that defendants unlawfully canceled shipments of goods, attempted to divert goods, supplies and mail from plaintiff's possession, unlawfully accessed plaintiff's Facebook and Yelp! online accounts and web pages and unlawfully attempted to gain access to and control of plaintiff's credit card processing service account. Assuming that a cause of action for trespass or conversion even applies to intangible items such as websites (compare Thyroff v Nationwide Mut. Ins. Co., 8 NY3d 283, 292-293 [2007], with C & B Enterprises USA, LLC v Koegel, 136 AD3d 957, 958 [2016]), as noted above, plaintiff had no possessory interest in the online accounts and web pages because the seizure order permitted Belleville to lawfully gain control of them. Additionally, defendants did not actually interfere with plaintiff's control of the credit card processing service account. Regarding orders and deliveries, plaintiff was required to point to "specific identifiable" property that defendants interfered with or over which defendants allegedly exercised control (Smallwood v Lupoli, 107 AD3d 782, 784-785 [2013] [internal quotation marks and citation omitted], lv dismissed and denied 23 NY3d 958 [2014]; see C & B Enterprises USA, LLC v Koegel, 136 AD3d at 958). Setting aside general allegations in the complaint and Keto's affidavit, plaintiff only specifically referred to defendants interfering with deliveries from one particular supplier, but Keto averred that she ultimately received the delivery [*4]in her new location with no appreciable delay and no alleged damage (see Abrams v Pecile, 115 AD3d 565, 566 [2014]; "J. Doe No. 1" v CBS Broadcasting Inc., 24 AD3d at 215). For the remainder of the alleged orders or deliveries, plaintiff failed to sufficiently identify them, or assert that defendants either actually interfered with them or were not lawfully authorized to do so by the seizure order. Thus, Supreme Court properly dismissed the cause of action sounding in trespass to chattels or conversion. Accordingly, the court properly dismissed the entire complaint.
Lynch, Clark, Mulvey and Rumsey, JJ., concur.
ORDERED that the order is affirmed, with costs.